**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Carnes James BLACKSTOCK, Defendant-Appellant.**

**No. 26697.**

United States Court of Appeals, Ninth Circuit.

Nov. 9, 1971.

Rehearing Denied Dec. 13, 1971.

Ely, Circuit Judge, dissented and filed opinion.

Ronald W. Sommer (argued), Tucson, Ariz., for defendant-appellant.

Patricia Whitehead, Asst. U. S. Atty. (argued), Richard K. Burke, U. S. Atty., Ann Bowen, Asst. U. S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before DUNIWAY and ELY, Circuit Judges, and BYRNE, District Judge.*

DUNIWAY, Circuit Judge:

Blackstock, while driving an International Scout car west on Highway 80 just outside of Douglas, Arizona, was stopped by a United States Customs Agent who found marijuana in the vehicle. Blackstock was charged, tried by the court and convicted of concealing and transporting marijuana in violation of 21 U.S.C. § 176a. On appeal, Blackstock contends that his motion to suppress the marijuana seized by the customs agent should have been granted.

* Honorable William M. Byrne, United States District Judge, Central District of California, sitting by designation.

We hold that the motion was correctly denied and affirm the conviction.

Customs agent Harold Boldin was the only witness at the hearing on the motion to suppress. He testified that on May 26, 1970, he had a conversation with Officer Boggs of the Douglas Police Department. Boggs told Boldin that on May 25 he had seen Blackstock in Agua Prieta, Mexico, adjacent to Douglas. Blackstock had taken a blue Valiant taxicab to a particular location in Agua Prieta where he viewed what appeared to Boggs to be a display of several packages of marijuana on the hood of an International Scout. Boggs described Blackstock and related the color of the Scout but not the year or license number. Boggs had requested a lookout on the Scout at the Douglas port of entry, and when the vehicle crossed into the United States it was searched but no contraband was found. Blackstock crossed the border at about the same time on foot and was also searched. Twelve hundred dollars was found on Blackstock but again no contraband.

Boldin received no further information about Blackstock or the Scout until shortly after midnight on May 28. At that time Boldin was driving a patrol car in a northerly direction on A Avenue in Douglas (see Appendix government Exhibit No. 1). He passed the Scout vehicle which was heading south on "A" between 9th and 8th Streets and observed the driver whom he later identified as Blackstock. Boldin turned his vehicle around and proceeded to follow the Scout as it turned east on 8th Street. At about 8th Street and Florida Avenue Boldin lost sight of the Scout.

Boldin testified that the desert area to the south and east of the intersection of 8th Street and Florida Avenue and beginning at approximately the dead-end intersection of Dallas Avenue and 5th Street was known for a high incidence of smuggling activity. There was no testimony, however, that anyone had observed the Scout turn off 8th Street and head south toward the desert area. The Scout was again sighted some five to ten minutes after Boldin had "lost" it, when Officer Boggs saw the Scout turning west onto 9th Street at Dallas Avenue, a distance of about five blocks from the point where Boldin first lost sight of it. Boggs followed the Scout west on 9th and then north on "A" until it reached 15th Street where Boldin resumed surveillance, and Boggs followed at an inconspicuous distance. The procession continued north on "A" and then turned west onto 22nd Street whereupon the Scout slowed down, turned out its lights and pulled in alongside the Surplus Swap Shop at the corner of 22nd and Pan American Avenue. There was testimony that one person got out of the Scout and that what appeared to be a discussion took place, but apparently no one left the immediate vicinity of the Scout, nor did any newcomers arrive.

Within five to ten minutes the Scout started up again and drove south on Pan American Avenue to the Douglas Cafe where it pulled into the parking lot. The driver went into the cafe, remained for about ten to fifteen minutes and then got back into the Scout and drove west on Highway 80. Boldin, Boggs and a Douglas police officer gave chase in three vehicles. About three miles west on Highway 80 Boldin stopped the Scout vehicle. As he approached the Scout, Boldin detected a strong odor of marijuana and observed a duffel bag behind the driver's seat. At the mouth of the bag Boldin saw what appeared to him to be marijuana debris. From their outline, the contents of the bag appeared to be rectangular or brick-shaped objects. At this point Boldin and Boggs opened the bag and discovered 24 bricks of marijuana.

When the Scout was stopped there was a passenger as well as the driver, Blackstock. It appears from Boldin's testimony that Boggs had reported the presence of the passenger both at the Swap Shop and at the Douglas Cafe. Boldin, however, was unable to say with certain-

ty that the passenger was not also in the Scout when he first sighted it traveling south on A Avenue.

The government argues that the search may be upheld either as a border search or as one based on probable cause. We find that there was probable cause and do not reach the border search question.

First, there can be no doubt that when Agent Boldin, upon approaching the Scout, detected the strong odor of marijuana and observed the marijuana debris and the shape of the contents of the duffel bag, he had probable cause to believe the bag contained marijuana. As the Supreme Court stated in Harris v. United States, 1968, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067:

> "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."

This court has held that where a customs inspector, familiar with the odor of marijuana, smells such an odor emanating from under the hood of a car, that fact alone is sufficient to constitute probable cause for the subsequent search of the car. Fernandez v. United States, 9 Cir., 1963, 321 F.2d 283. And where during the course of a routine investigation for illegal aliens conducted some miles from the border an immigration official opens a car trunk and smells marijuana odor and observes what appears to be the corner of a brick of marijuana protruding from the mouth of a duffel bag, probable cause arises at that point to search the bag and the rest of the car, and to arrest the occupants. Fumagalli v. United States, 9 Cir., 1970, 429 F.2d 1011. See also United States v. Marin, 9 Cir., 1971, 444 F.2d 86;

United States v. Oswald, 9 Cir., 1971, 441 F.2d 44; United States v. Freeman, 9 Cir., 1970, 426 F.2d 1351.

Blackstock does not seriously dispute the above conclusion. He argues instead that Agent Boldin had no right to be in the position to view the duffel bag or smell its odors because the initial stopping of the vehicle was an arrest without probable cause. Blackstock's contention that every stop of a vehicle amounts to an arrest for which probable cause must be shown is in error. "[T]here is nothing *ipso facto* unconstitutional in the brief detention of citizens under circumstances not justifying an arrest, for purposes of limited inquiry in the course of routine police investigations." Wilson v. Porter, 9 Cir., 1966, 361 F.2d 412, 415. To justify an investigatory stop short of an arrest "[a] founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing." *Id.* See also United States v. Jackson, 9 Cir., 1970, 423 F.2d 506.

Here Agent Boldin had received information linking both Blackstock and the Scout to a display of marijuana in Mexico. In addition, he had personal knowledge of the Scout's suspicious movements in the early morning hours in the vicinity of a known smuggling area. While these circumstances are not inconsistent with innocence, we think Boldin was entitled to a founded suspicion that the Scout might contain contraband and that a stop for the purposes of further inquiry was justified. Accord, United States v. Oswald, *supra*.[1]

The difference between this case and Henry v. United States, 1959, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134, and United States v. Kandlis, 9 Cir., 1970, 432 F.2d 132, cited by Blackstock, is

---

1. In *Oswald* the agent's suspicions were heightened by the addition of four passengers who were not present in the vehicle when it crossed the border. In this case there is no positive testimony that the occupancy of the Scout had increased between the time it was first sighted and the time the stop was effected. We do not consider the absence of this element to be crucial where the other information known to Agent Boldin was sufficient to justify a limited investigatory stop.

that in neither of those cases did the suspicions of the agents who conducted the searches blossom into probable cause by observations of contraband goods in plain view before the searches were begun.

The judgment of conviction is affirmed.

APPENDIX
No. 26,697
United States of America v. Carnes James Blackstock

FIGURE 1

Government Exhibit
Jan. 30, 1970

[A4510]

ELY, Circuit Judge (dissenting):

I respectfully dissent. Our court has previously written in language too clear to be misinterpreted that a United States Customs Agent must have probable cause to stop and search a vehicle for contraband in a non-border search situation. United States v. Jackson, 423 F.2d 506, 507 n. 2 (9th Cir.), *cert. denied,* 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 57 (1970). *See also* United States v. Almeida Sanchez, 452 F.2d 459, 461 (9th Cir. 1971) (Browning, J., dissenting). Customs agents, unlike local or state police, are not "general guardians of the public peace," *Jackson, supra* at 508, and their powers are expressly limited by statute. *See* 19 U.S.C. §§ 482, 1581; 26 U.S.C. § 7607. *See also* United States v. Glaziou, 402 F.2d 8, 14 (2d Cir. 1968), cert. denied, 393 U.S. 1121, 89 S.Ct. 999, 22 L.Ed.2d 126 (1969); Alexander v. United States, 362 F.2d 379, 381–382 (9th Cir.), cert. denied, 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439 (1966).

The distinctions between the present case and those relied upon by the majority are, I think, quite patent. Wilson v. Porter involved investigatory detention by California police officers, not

United States Customs Agents, and in *Jackson,* the court concluded that probable cause existed prior to the stopping of the defendants' vehicle. I therefore cannot agree with my Brothers that those two cases control the disposition of this appeal.

Even more disturbing than the majority's failure to recognize the fundamental distinctions discussed above is its bifurcation of the stop and search episode into two separate events. The supervising officer, Boldin, candidly admitted, in the hearing on the motion to suppress, that he intended, before the vehicle was halted, that it be searched and that he "figured [he] would arrest" Blackstock. Obviously, then, it was not the intention of the officer, when the car was stopped, to conduct a "limited inquiry in the course of routine police investigation[s]." Boldin stopped the vehicle for the purpose of conducting a search for contraband. Since there was absolutely no probable cause for initiating the search when the automobile was stopped, the search was invalid *ab initio.*

"Automobiles, because of their mobility, may be searched without a warrant upon facts not justifying a warrantless search of a residence or office. Brinegar v. United States, 338 U.S. 160 [69 S.Ct. 1302, 93 L.Ed. 1879] (1949); Carroll v. United States, 267 U.S. 132 [45 S.Ct. 280, 69 L.Ed. 543] (1925). The cases so holding have, however, always insisted that the officers conducting the search have 'reasonable or probable cause' to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search."

Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 221, 88 S.Ct. 1472, 1475, 20 L.Ed.2d 538 (1968).

The majority's holding, allowing an initially unlawful search to be validated by the fortuitous discovery of probable cause during the course of the illegal proceedings, subverts the Fourth Amendment's unqualified proscription of unreasonable searches.

"Having thus established that contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant, we come now to consider under what circumstances such search may be made. It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding liquor and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search. Travellers may be so stopped in crossing an international boundary because of national self protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in. But those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise."

Carroll v. United States, 267 U.S. 132, 153–154, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925); *see* Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *cf.* Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). *See generally* Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

I would reverse.