**UNITED STATES of America, Plaintiff-Appellee,**

v.

**David L. LINCOLN, Defendant-Appellant.**

**No. 73-2679.**

United States Court of Appeals, Ninth Circuit.

March 20, 1974.

Minoru Inadomi (argued), Forgy, Thamer & Inadomi, Santa Ana, Cal., for defendant-appellant.

Stephen W. Peterson, Asst. U. S. Atty. (argued), Harry D. Steward, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before CHOY and WALLACE, Circuit Judges, and WILLIAMS,* District Judge.

## OPINION

DAVID W. WILLIAMS, District Judge:

This is an appeal from a judgment of conviction by a jury of violations of 21 U.S.C. §§ 841(a)(1), 846, 952, 960 and 963, dealing with conspiracy to import marijuana, importing marijuana, conspiracy to import marijuana with intent to distribute, and possessing marijuana with intent to distribute. Prior to the trial, appellant's motion to suppress the evidence was heard and denied. The Government's motion to compel appellant to produce handwriting exemplars, filed less than one week prior to the original trial setting, was granted, and on the Court's motion a new trial date was set four days away. Appellant and co-defendant Thibodeaux moved to sever their case from co-defendant Robles-Padilla but this motion was denied. The Court ordered a further postponement of the trial for 10 days because of a congested calendar over appellant's objection. On the new trial date the Government moved to sever the appellant's case from that of the other two defendants, stating as its reason an anticipated disposition of the Robles-Padilla case and possible evidentiary problems in a joint trial of the appellant with co-defendant Thibodeaux. This motion was granted over appellant's objection.

## FACTS

On December 14, 1972, Customs Special Agent Zumwalt and Border Patrol Agent Caldwell were maintaining a lookout at the Wisteria checkpoint located on the All-American Canal.[1] The agents were maintaining their watch from approximately three-quarters of a mile away with the aid of binoculars.

At about 6:50 A.M., Zumwalt observed people on foot on the south side of the check. He then observed a car heading eastbound on the south side of the canal towards the Wisteria crossing. The automobile then turned north proceeding through the Wisteria check. Zumwalt and Walker followed the car, later identified as a 1971 Ford Galaxie, approximately 10 to 12 miles north into El Centro, California, where it was parked. The driver of the Ford, later identified as co-defendant Robles-Padilla, then proceeded to a taxi stand where he entered a taxi and returned to Mexico.

From approximately 7:10 A.M. until 10:45 A.M., the unattended Ford was under constant surveillance by Zumwalt and other agents. At 10:45 A.M., as Walker was relieving Zumwalt, he observed a green Volkswagen approach the Ford. A white female, later identified as co-defendant Thibodeaux, exited the Volkswagen, being driven by the appellant, entered the Ford and drove away. No attempt was made at this time to stop or search the occupants of either car. Agent Zumwalt followed the Volkswagen and later stopped it about eighteen miles west of El Centro. Agent Walker followed the Ford and stopped it about sixteen miles west of El Centro.

Walker approached the driver of the Ford, co-defendant Thiobodeaux, and asked her if she knew what was in the trunk and if she had a key to the trunk. After receiving a negative response, Walker entered the car whereupon he encountered the smell of marijuana. He then removed the rear seat and saw what appeared to be kilo packages of marijuana.

---

* The Honorable David W. Williams, United States District Judge for the Central District of California, sitting by designation.

1. The Wisteria check area is located 100 feet from the Mexican-American border and approximately three and one-half miles west of Calexico, California. The Wisteria check is an illegal port of entry into the United States. The All American Canal parallels the Mexican-American border for some two to three miles east of the Wisteria check and for some seven miles west of the check before it turns north. There are dirt roads leading south from the Wisteria check into Mexico and another road which runs just south of the border from Mexicali to the check and beyond.

In the meantime, Zumwalt had stopped the Volkswagen and asked the appellant for some identification. Receiving the appellant's driver's license, he went back to his car and using his radio learned that marijuana had been found in the Ford. Appellant Lincoln was then arrested.

At trial the Government produced the sales manager of University Oldsmobile who identified the appellant as the person who purchased a 1971 Ford Galaxie in October of 1973 under an assumed name. A pretrial identification was also made by the sales manager based on a group of photos shown him including the appellant's driver's license, copies of other drivers licenses, and other photos.

The Government also produced Sgt. Schoonover of the San Diego Police Department, a handwriting expert, who compaired the handwriting exemplars of the appellant taken prior to trial with the signature of the purchaser of the Ford and formed the opinion that the signatures were one and the same.

Sgt. Schoonover also formed the opinion that the signature on a hotel receipt dated December 11, 1972, from the Plaza Hotel in Mexicali, Mexico was that of the appellant. This receipt had been found in the possession of co-defendant Thibodeaux at the time of her arrest.

### I.

■ The first issue presented on appeal is whether the search of the Ford Galaxie constituted a valid border search. It is well settled that Customs Agents need not meet the Fourth Amendment requirements of probable cause to conduct a border search. United States v. Weil, 432 F.2d 1320 (9th Cir. 1971).

The appellant contends that Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), is controlling here. In that case, a search was conducted by a roving patrol of the United States Immigration and Naturalization Service. The defendant was stopped and searched some 25 miles from the Mexican border, without a warrant and without probable cause.

Here, unlike *Almeida-Sanchez,* the 1971 Ford had been under constant surveillance since it was spotted crossing over the Wisteria check. This is not a situation involving a search by a roving patrol of governmental agents having no past information that the defendant was carrying contraband. Rather, the search was conducted after the Ford had been under surveillance for some four hours and 25 miles. It follows that *Almeida-Sanchez* is distinguishable and therefore not controlling.

■■ This case is an example of a properly extended border search. We are convinced that the trial court found sufficient facts to support the inference that the Ford had come from Mexico. It was first seen by the customs agents as it was traveling in an easterly direction near the Wisteria checkpoint along the dirt road on United States soil just south of the All-American Canal. Calexico lies about 3½ miles east of the checkpoint, but the area to the west, from whence the car came, is uninhabited for many miles. The Wisteria checkpoint is a bridge crossing the canal. The canal is located approximately 50 to 75 feet from the International Boundary. A locked gate bars the checkpoint since it is not a legal point of entry into this country. The customs officers observed a small group of men approach the checkpoint on foot from the direction of Mexico and saw one of them open the locked gate to permit the load car to cross the bridge into the United States.

Although we find the facts sufficient to support the inference that the Ford crossed the border, one case seems to suggest that under circumstances similar to these, it is not necessary to establish with certainty the fact that the searched vehicle had itself crossed the border. United States v. Markham, 440 F.2d 1119, 1121 and 1122 (9th Cir. 1971). Close proximity to the border has been held to not be required to es-

tablish a border search, provided the vehicle searched had been under surveillance. Lannom v. United States, 381 F. 2d 858 (9th Cir. 1967). Constant surveillance, however, is not required. Alexander v. United States, 362 F.2d 379 (9th Cir. 1966). We therefore conclude that the search of the Ford constituted a valid extended border search. We need not reach the issue of probable cause.

## II.

Appellant next contends that the stopping of the Volkswagen and seizure of his driver's license violated his rights guaranteed by the Fourth Amendment.

■ We have held that a temporary detention of a vehicle may be made by border agents beyond the scope of a border search, when based on a "founded suspicion", which may be less than probable cause. United States v. Bugarin-Casas, 484 F.2d 853 (9th Cir. 1973); United States v. Barron, 472 F.2d 1215 (9th Cir. 1972); United States v. Roberts, 470 F.2d 858 (9th Cir. 1972).

■ The facts as known to Agent Zumwalt are sufficient to create a "founded suspicion" in his mind that illegal activity was afoot. He had previous experience with similar operations in the area and had been a member of the team which had the Ford under surveillance since crossing the Wisteria check. He was able to observe the Volkswagen, driven by the appellant, approach the parked Ford and drop off a passenger who proceeded to drive off in the Ford. He also observed the two cars proceeding in tandem on the highway before separating. Such knowledge is sufficient to create a "founded suspicion" in the mind of Zumwalt and the temporary detention was therefore valid.

■ Turning now to the seizure of the appellant's driver's license, we have held that if after a valid investigatory stop, based on a "founded suspicion", probable cause arises, the search may then be made. United States v. Bugarin-Casas, supra; United States v. Roberts, supra; United States v. Blackstock, 451 F.2d 908 (9th Cir. 1971).

■ There can be no question but that federal agents upon validly stopping a vehicle may ask for some identification of the driver. Such is necessarily a part of any law enforcement agency's procedure. Appellant's real contention is that the subsequent seizure of the license, in that it was never returned to him, violated the Fourth Amendment.

The Government contends that the retention of the license was necessary for investigative purposes. The record indicates that appellant refused to allow Polaroid pictures taken of himself which necessitated Agent Zumwalt resorting to the driver's license for the pretrial photo spread. United States v. Blackstock, supra, supplies the answer for us here. In *Blackstock,* this Court held that the temporary detention of the defendant was based on a "founded suspicion" and that for purposes of further inquiry, the stopping of the car was justified. Upon stopping the car, the agent detected the smell of marijuana coming from the car. This was held sufficient to establish probable cause for the subsequent search.

■ In the present case, Zumwalt, upon validly stopping the Volkswagen, radioed his other unit and learned that marijuana had been found in the Ford. This additional information is sufficient to establish probable cause for the subsequent retention of the driver's license for purposes of investigation.

The facts are therefore sufficient to warrant a temporary detention of the Volkswagen. Also upon learning that marijuana had been discovered in the Ford, probable cause was established to justify the seizure of the appellant's driver's license.

## III.

■ The appellant contends also that the compelled production of the handwriting exemplars violates the Fourth

and Fifth Amendment right against self-incrimination. It has long been held that the compelled display of physical characteristics infringes no interest protected by the privilege against self-incrimination. Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910).

It is well founded that handwriting exemplars are not protected by the Fifth Amendment privilege against self-incrimination. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L. Ed.2d 1178 (1967).

*Schmerber* has made it clear that the obtaining of physical evidence from a person involves a potential Fourth Amendment violation at two different levels—the seizure of the person necessary to bring him in contact with government agents, and the subsequent search for and seizure of evidence.

As to the seizure of the appellant, we have already found that a valid border search led to the arrest of the appellant.

As to the possible violation of the Fourth Amendment at the second level —the subsequent search for and seizure of evidence—the Supreme Court has as recently as last year stated that no violation of the Fourth Amendment is found from compelling execution of handwriting or voice exemplars. United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L. Ed.2d 67 (1973); United States v. Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973).

*Dionisio* relied on Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), which held that the Fourth Amendment provides no protection for what "a person knowingly exposes to the public, even in his home or office." The physical characteristics of a person's voice or handwriting are constantly exposed to the public, hence no intrusion into a person's privacy results from the compelled execution of a handwriting exemplar. We find no Fourth or Fifth Amendment violation to exist.

## IV.

The appellant next contends that pursuant to Rule 16(f) of the Federal Rules of Criminal Procedure, the government's motion to produce was not timely because not made within 10 days after arraignment. Rule 16(f) dealing with time for motions applies only to defendants. In the Matter of Magnus, Mabee & Reynard, Inc., 311 F.2d 12 (2nd Cir. 1962).

## V.

Appellant contends also that the pretrial photographic identification procedure was so impermissibly suggestive as to give rise to an irreparable misidentification at trial. Each case involving pretrial initial identification by photographs must be considered on its own facts; and convictions based on eyewitness identification at trial following such pretrial identification will be set aside on the ground of prejudice only if the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1967).

Appellant relies on United States v. Fowler, 439 F.2d 133 (9th Cir. 1971), in support of his contention. In *Fowler*, the pretrial photo identification was conducted with only two photographs, both of the defendant.

In the case at bar, no less than nine photos were shown to the car salesman. One was the color photo on appellant's driver's license and the others were either black and white copies of driver's licenses or other types of photos. This in and of itself is not impermissibly suggestive so as to give rise to the very substantial likelihood of irreparable misidentification at trial.

The record also shows that the salesman had been in direct visual contact with the appellant for about a half-hour during the sale. At trial the salesman also testified that his in-court identification was based on his recollection of the

sale of the auto and not on the pretrial photo identification.

 Such factors indicate that the likelihood of irreparable misidentification was very low in this case and that the conviction should stand because of the reliability of the in-court identification. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

### VI.

 Appellant relies on Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), in support of his contention that appellant was denied a speedy trial. A claim that a defendant has been denied his right to a speedy trial is subject to a balancing test, in which the conduct of both the prosecution and the defendant are weighed. Courts should consider such factors as length of the delay, reason for the delay, the defendant's assertion or non-assertion of his right, and prejudice to the defendant resulting from the delay, in determining whether a defendant's right to a speedy trial has been denied. Barker v. Wingo, supra. This case involves a delay of fifteen days. These facts do not fall within *Barker*. On balance, the fifteen day delay was not lengthy nor were the reasons for the delay primarily with the Government. The appellant was not denied his Sixth Amendment right to a speedy trial.

### VII.

 The final contention of appellant is that the evidence is insufficient to support the jury's finding of guilt. When determining the sufficiency of the evidence to sustain a conviction, the evidence must be taken in a light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Nelson, 419 F.2d 1237 (9th Cir. 1969); United States v. Ramos, 476 F. 2d 624 (9th Cir. 1973). The reviewing court must assume that the trier of facts resolved all matters of credibility of witnesses, evidentiary conflicts, and

drew all reasonable inferences from proven facts in a manner which would support the verdict. United States v. Nelson, supra.

We find the evidence sufficient to sustain the conviction of the appellant.

Affirmed.