**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Carlos JAIME-BARRIOS, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Rafael PINI-ORNELAS, Defendant-Appellant.**

**Nos. 73-3001, 73-3002.**

United States Court of Appeals, Ninth Circuit.

March 25, 1974.

Certiorari Denied June 17, 1974. See 94 S.Ct. 3178.

Frank Ragan, Deputy Federal Public Defender, (argued), Charles M. Sevilla, Deputy Federal Public Defender, San Diego, Cal., for appellant.

Peter Nuñez, Asst. U. S. Atty., (argued), Harry D. Stewart, U. S. Atty., Stephan G. Nelson, Robert P. Risso, Asst. U. S. Attys., San Diego, Cal., for appellee.

Before DUNIWAY and CHOY, Circuit Judges, and TAYLOR,* District Judge.

PER CURIAM:

Appellants, Carlos Jaime-Barrios (Jaime) and Rafael Pini-Ornelas (Pini) have appealed from a judgment of the district court, sitting without a jury, adjudging each of them guilty as charged in Count Three (conspiring to possess with intent to distribute 939 pounds of marijuana) and Count Four (possession with intent to distribute 939 pounds of marijuana) of a four-count Indictment.

On August 2, 1973, appellants filed a motion to suppress the marijuana seized from the vehicles being driven by them and to sever their trial. After an evidentiary hearing, the motion to suppress and to sever was denied. Immediately thereafter, the case was submitted to the court upon the evidence introduced at the hearing on the motion to suppress by way of a stipulation of counsel and agreement of appellants. The court found appellants guilty as to the above mentioned counts and not guilty as to Counts One and Two of the Indictment.

Appellants contend that, under the undisputed facts and circumstances existing at the time the vehicles were stopped and searched, the trial court erred in failing to grant their motion to suppress.

The record reveals that on July 3, 1973, at approximately 6:30 A.M., Robert H. Dunlap, a Border Patrol Agent, accompanied by Agent Martinez, was patrolling the High Pass area of the International Border between the United States and Mexico. This is a remote area, fairly desolate, suitable for ranching, and on the date in question, there were only four residences between Tierra del Sol Road and East-West Road and Campo, six miles to the west. Agent Dunlap had lived in one of the residences for about two years and knew all of the persons living in the area, as well as being familiar with the vehicles they drove. The Tierra del Sol Road connects with the East-West Road at a point approximately 300 yards from the border and the East-West Road is approximately 100 to 150 yards from the border at the point it intersects with Indian Road. Dunlap testified that on many occasions he had apprehended persons smuggling aliens or marijuana on the Tierra del Sol Road; that the traffic on this road is extremely light and is normally that of residents of the area who usually operate 4-wheel drive vehicles or pickups.

When Agent Dunlap approached the above mentioned area, at approximately 6:30 A.M. on July 3, 1973, he encountered appellant Jaime at the intersection of the East-West Road and the Tierra del Sol Road driving a dark green 1969 Chrysler automobile at a faster rate of speed than normal on this very rough unimproved dirt road. As the cars passed each other, Dunlap got a good look at Jaime who was alone in the Chrysler.

Because of his experience in apprehending persons smuggling aliens and marijuana on this road, the early hour of the day, the fairly high rate of speed the vehicle was traveling on the rough dirt road, and because he did not recog-

* Of the District of Idaho, sitting by designation.

nize the vehicle or the driver, Dunlap and Martinez decided to turn around and stop the car. Dunlap testified that he had been on patrol in the area during the entire night and had not seen the Chrysler at any of the residences in the area, and since none of the houses had garages, it was unlikely that the vehicle might have been parked out of sight.

On cross-examination, Dunlap agreed that on weekends there was more traffic in the area in question because of campers and motorcycles; that the stop of appellants' vehicles took place the day before the Fourth of July; that it was possible the Jaime vehicle belonged to a visitor, relative or messenger of one of the four homes within two miles of the intersection; that the car could also have belonged to a camper or vacationer driving through the area; and that he had never stopped a car in the immediate area of the stop in question and found aliens or marijuana.

In response to questions by the court, Dunlap stated that the car driven by appellant Jaime was unusual for the area because most people drove pickups; that he owned a 1971 Plymouth which he drove to town and that a neighbor owned a 1967 Plymouth.

After stopping the Jaime vehicle and as Dunlap approached it, he noticed a large amount of white powder around the trunk of the car which was later discovered to be talcum powder. He testified that most of the cars laden with marijuana, which he had previously encountered, used talcum powder to cover the smell of marijuana. When Dunlap approached the driver of the car, a short conversation ensued and then Dunlap asked appellant to open the trunk of his car, which he did, and Dunlap observed kilo-size packages of marijuana covered with white powder.

As appellant Jaime was being placed under arrest, a 1969 Chevrolet passed and Jaime was observed making motions with his hand to the driver. It was observed that the Chevrolet also had white powder around the trunk. The agents pursued and stopped the Chevrolet which, as later determined, was being driven by appellant Pini. Packages of marijuana were also found in the trunk of his car covered with white powder.

Appellant Jaime concedes that if the legality of the stop is sustained, probable cause existed to search his vehicle, based on Agent Dunlap's smell of marijuana and the actions and words of appellant. Appellant Pini agrees with the trial judge that the validity of the stop of his vehicle depends on the right of the officers to stop appellant Jaime's vehicle.

In view of the concessions made by appellants, the only issue remaining is whether, under the facts and circumstances as disclosed in the record, the agents were legally justified in stopping the appellants at the time and place in question. The trial court held that under the circumstances, Agent Dunlap was justified in stopping the vehicles based on the doctrine of "founded suspicion". We agree. This doctrine was first enunciated by this court in Wilson v. Porter, 361 F.2d 412–415 (9th Cir. 1966) wherein it was stated:

" . . . [D]ue regard for the practical necessities of effective law enforcement requires that the validity of brief, informal detention be recognized whenever it appears from the totality of the circumstances that the detaining officers could have had reasonable grounds for their action. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing."

There is nothing in the circumstances of this case to indicate that Agent Dunlap was motivated by any considerations other than those which he related in his testimony. It is our opinion that in the totality of the circumstances in this case, Dunlap had a founded suspicion as the basis for stopping the Jaime automobile. There is nothing to indicate the basis for the detention was arbitrary or harassing.

458

This court has repeatedly held that a stop may be made by agents based on a founded suspicion which may be less than probable cause. United States v. Bugarin-Casas, 484 F.2d 853–854 (9th Cir. 1973).

Appellants argue that the driver of the Jaime car could or might have been someone engaged in some lawful activity. However, where the record discloses circumstances, as it does here, which could move an officer in the reasonable exercise of his duty to the action taken, we need not look for a reconstructed, after-the-fact explanation of what may have been nothing more at the time of the occurrence than the instinctive reaction of one trained in the prevention of crime. Wilson v. Porter, supra, 361 F. 2d, at 415.

We believe the facts and circumstances surrounding the stop and search in this case are fairly analogous to those in Wilson v. Porter and United States v. Bugarin-Casas, supra. In our opinion the stop and search made in this case was based on a founded suspicion.

Affirmed.