**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Noe LARIOS–MONTES, Defendant-
Appellant.**

**No. 73–3571.**

United States Court of Appeals,
Ninth Circuit.

July 11, 1974.

942

Robert L. Boles (argued), of Federal Defenders, San Diego, Cal., for defendant-appellant.

Richard Strauss, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

Before DUNIWAY and GOODWIN, Circuit Judges, and BURNS,* District Judge.

---

OPINION

DUNIWAY, Circuit Judge:

Since the decision of the Supreme Court in Almeida-Sanchez v. United States, 1973, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596, the government seems to be turning more and more to the doctrine of "founded suspicion" to justify searches and seizures that would otherwise be found to violate the Fourth Amendment as expounded in *Almeida-Sanchez*. In that case, the Court held that random roving stops and searches, even in areas known to have a high instance of smuggling, violate the Fourth Amendment. The present case involves the founded suspicion doctrine.

Larios-Montes was convicted under one count of conspiracy to transport aliens illegally in this country (18 U.S.C. § 371) and under nine counts of illegal transportation of such aliens (8 U.S.C. § 1324 (a)(2)). On appeal he argues that the district court erroneously denied both his motion to suppress and his motion to sever. We affirm.

Larios-Montes' principal claim is that his motion to suppress evidence obtained as a result of a stop of his car should have been granted because the stop was a violation of his Fourth Amendment rights. The district court held that under the facts and circumstances of this case, Border Patrol Agents had a founded suspicion on the basis of which they could properly stop Larios-Montes' car.

Stated most favorably to the government, the facts are these: On September 9, 1973, two Border Patrol Agents were stationed at a Border Patrol traffic checkpoint located on Highway 86, some fifty miles north of the border and about thirty yards south of Highway 78. Highway 78 comes from the west and ends at the point where it connects with Highway 86. There is a stop sign at the intersection facing drivers approaching on Highway 78. At approximately 12:05 a. m., the agents saw two eastbound cars on Highway 78 traveling at a normal

---

* The Honorable James M. Burns, United States District Judge for the District of Oregon, sitting by designation.

rate of speed about 150 yards apart. They watched the cars approach for about half a mile. The first car slowed down to five or ten miles an hour at the stop sign before it entered Highway 86 and turned north. The second car did not stop at all at the intersection but just "skidded around the corner" and proceeded north. Agent Strain saw only one passenger in the first car and that passenger appeared to be a Mexican. The agent saw three people in the front seat of the second car and it appeared to him that several other people were slouched down in the back seat. The second car was also riding extremely low to the ground.

There is usually very little traffic on Highway 78 at this hour, and no other cars had been seen there for forty minutes. Strain said that Highway 78 was a route often used by smugglers to bypass fixed checkpoints. Strain also testified that he was familiar with the "lead car-load car" modus operandi, whereby two cars travel together during a smuggling venture with the first car operating primarily as a scout car.

The agents, thinking that the two cars were jointly engaged in smuggling aliens, pursued them and stopped them one mile north of the checkpoint. The stop of the second car, driven by co-defendant Casillas-Perez, revealed that five aliens, all illegally in this country, were riding in the cab and a search of the trunk turned up three more such aliens. Neither this stop nor this search are challenged here. Agent Strain stopped the first car, which was driven by Larios-Montes. In response to an inquiry, he learned that the single passenger was also an "illegal" alien.

█ Larios-Montes argues that the officers did not have probable cause or even a founded suspicion as a basis for stopping his car. If he is right, the stop violated his Fourth Amendment rights. "Federal agents cannot constitutionally stop automobiles systematically or randomly on the chance of discovering something illegal." United States v. Mallides, 9 Cir., 1973, 473 F.2d 859, 860; Carroll

v. United States, 1925, 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543. A stop of an automobile is a "seizure" and the Fourth Amendment requires that it be justified by articulable facts and circumstances which support the conclusion that the intrusion was not unreasonable. United States v. Mallides, *supra,* 473 F.2d at 861. *Cf.* Terry v. Ohio, 1968, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

█ We have held in a number of cases that the minimal requirement for the authorization of a stop of a car is founded suspicion. United States v. Jaime-Barrios, 9 Cir., 1974, 494 F.2d 455; United States v. Bugarin-Casas, 9 Cir., 1973, 484 F.2d 853; United States v. Barron, 9 Cir., 1973, 472 F.2d 1215; United States v. Roberts, 9 Cir., 1972, 470 F.2d 858; Wilson v. Porter, 9 Cir., 1966, 361 F.2d 412. While we are aware that law enforcement officers must often act swiftly and rely upon their judgment and experience, Wilson v. Porter, *supra,* we have never "upheld the legality of a detention based upon an officer's unsupported intuition," United States v. Mallides, *supra,* 473 F.2d at 862. To do so would be to move perilously close to justifying a stop solely on the basis of the fact that "[t]he agent's intuition led him to the jackpot." United States v. Portillo, 9 Cir., 1972, 469 F.2d 907, 911. Fourth Amendment rights cannot be so easily circumvented.

█ We are convinced, however, that such a post hoc rationalization of police behavior is not involved here. Given the time and the place, the officers had reason to carefully observe any vehicle that bypassed their checkpoint by proceeding on Highway 78. The fact that the first car to appear in the area in forty minutes was followed fairly closely by a second car could reasonably be expected to trigger the officers' suspicion of the lead car-load car modus operandi. Standing alone, however, such suspicion is not sufficient to justify stopping either car. It is not unusual for a driver on a lonely road at night, especially if he is unfamiliar with the road, to follow another car that is maintaining a steady pace.

The movements of the car ahead, the flashing of its brake lights, its entering upon curves, etc., will give him warning of hazards of which he might otherwise be unaware. Members of this court have done just such driving. We think, too, that the fact that the first car made what is sometimes called a "rolling stop" at Highway 86 is not a fact sufficient to found a suspicion. We doubt if there is a driver alive who has not done the same thing under similar circumstances. Here, however, there is more. The second car, which was heavily loaded, with passengers in the back seat who appeared to be trying to hide, made no stop. The officers could reasonably believe that its driver was following the first car for a special reason, and that the driver did not want persons at the checkpoint to get a good look at his car. Taken altogether, the facts did supply a founded suspicion justifying the stop.

Larios-Montes' second claim of error is that the trial court abused its discretion in denying his motion for a severance. At trial he asserted that if a severance were granted his co-defendant, Casillas-Perez, would testify in his favor. However, he had the burden of supporting this assertion. United States v. Bumatay, 9 Cir., 1973, 480 F.2d 1012, 1013. This burden he did not sustain. Casillas-Perez's attorney would not substantiate his assertion. Casillas-Perez would not testify unless the government would dismiss nine of the counts against him, which the government was unwilling to do. In short, Larios-Montes did not sustain his burden of showing that he would be prejudiced by a joint trial and the trial court did not abuse its discretion in denying his motion to sever. United States v. Thomas, 9 Cir., 1971, 453 F.2d 141, 144; United States v. Donaway, 9 Cir., 1971, 447 F.2d 940, 943.

Affirmed.

BURNS, District Judge, dissents from the portion of the foregoing opinion dealing with the doctrine of founded suspicion. He concurs in the portion of the opinion dealing with the second claim of error.