**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Alvin Ray CLARK, Defendant-Appellant.**

**No. 73–3608.**

United States Court of Appeals,
Ninth Circuit.

May 7, 1974.

Rehearing Denied June 17, 1974.

Certiorari Denied Oct. 21, 1974.

See 95 S.Ct. 180.

Frank T. Vecchione, Federal Defenders of San Diego, San Diego, Cal., for defendant-appellant.

Harry D. Steward, U. S. Atty., Stephen G. Nelson, Michael E. Quinton, Asst. U. S. Attys., San Diego, Cal., for plaintiff-appellee.

Before KOELSCH and WRIGHT, Circuit Judges, and BELLONI,* District Judge.

## OPINION

EUGENE A. WRIGHT, Circuit Judge:

On this appeal from a conviction on two counts of illegal transportation of an alien and inducing the illegal entry of an alien [8 U.S.C. § 1324(a)(2) and (4)], the appellant argues that his vehicle in which the aliens were being transported was unlawfully searched and that his motion to suppress should have been granted by the district court. We find the search by the immigration officer to have been lawful, and we affirm.

There is no serious dispute as to the facts. Less than a mile north of the international boundary with Mexico at 10:00 P.M. on an August evening in 1973, the border patrol agent observed the defendant's camper-type truck proceeding slowly toward the north. It was being driven "in a very hesitant manner" and "as if it was apprehensive as to where it was going." The agent started in pursuit. There were no other vehicles on the road during the surveillance. The defendant's vehicle drew to the side of the road and parked with lights turned off. The agent drove past without stopping.

The agent communicated with other officials by radio and learned that there had been unlawful alien entries in the immediate area. After receiving this information the agent turned his vehicle around and observed that the defendant's truck was back on the highway with its lights on. The whole process had taken about 10 minutes in an area generally described as agricultural. The agent directed the defendant to stop, using a red light signal. Before the agent could dismount, the defendant did so and went immediately to the back of his truck, and "in a very highly excited, nervous manner, he inquired of [the agent] the quickest way to get to the road going to Las Vegas, Nevada. * * * His manner of speech was rapid. Visibly he was trembling, not to the extent that you could say his hands were trembling, but the whole construction. He was trembling." The agent was in plain clothes and had been driving an unmarked vehicle.

Through the rear door of the camper truck, the agent observed a bunk bed with a blanket completely covering it to the floor and completely concealing the area beneath the bunk. The agent had not yet identified himself when he asked the defendant if he minded opening the camper. The defendant obtained the keys from inside the cab, unlocked the rear door, opened it, and, upon request, moved one corner of the blanket. The exposed area revealed a human foot. When the blanket was removed, a thoroughly soaked alien was found beneath it. The defendant had made no objection to opening the door or moving the blanket. After identifying himself as a border patrol agent, the officer advised the defendant he was under arrest.

The evidence indicated that the border with Mexico in the vicinity parallels the All-American Canal and is approximately 25 to 50 yards south of it. That por-

* Of the District of Oregon.

tion of the border was unfenced. It was generally known that it was common for illegal aliens to choose that area to cross into the United States. And the agent who made this arrest had apprehended five other aliens in the prior week.

■ The district court found that the stop of the defendant's vehicle by the agent was based on a founded suspicion. We agree. The proximity to the border at which the defendant's vehicle was first seen; the radio information indicating there had been an illegal crossing; the fact that there were no other vehicles in the area where the aliens had entered; and the fact that the defendant was heading away from the border on the only road which leads northbound away from it, when considered together, justify a founded suspicion that the appellant was concealing illegal aliens in the back of his truck.

■ In United States v. Zubia-Sanchez, 448 F.2d 1232, 1233–1234 (9th Cir. 1971), we said:

> We have repeatedly held that an authorized officer may stop an automobile and conduct a limited investigative inquiry of its occupants, without probable cause, if he has "reasonable grounds" for such action—"a founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing." Quoting Wilson v. Porter, 361 F.2d 412, 415 (9th Cir. 1966).

We have recently restated the rule in United States v. Jaime-Barrios, 494 F.2d 455 (9th Cir. 1974), and in United States v. Lincoln, 494 F.2d 833 (9th Cir. 1974). Thus, the agent was justified in stopping the defendant's vehicle. Having determined that the agent was justified in his reasonable suspicion and that the stop of the vehicle was valid, we conclude that subsequent events gave the agent prob-

able cause to search the camper. The defendant's extreme nervousness, his manner of speech, his trembling, and the nature of the camper vehicle with its blanket-covered bunk visible from the exterior provided probable cause to believe that the vehicle was concealing aliens or contraband: Thus, the agent's search was justified, and the motion to suppress was properly denied.[1]

Affirmed.

KOELSCH, Circuit Judge (dissenting):

Passing the question whether this stop was justifiable, I am far from persuaded that the subsequent events constituted probable cause for the search. The most the record shows is that Clark, upon being stopped, became extremely nervous. Most, if not all, people would, I venture, display some agitation if their automobile were crowded to the side of the road at night in a remote and desolate area and they were then accosted by an unidentified stranger. Courts should not tolerate officer-created probable cause.

---

1. Since we find probable cause, we need not consider the government's argument that this was a valid extended border search. *See* United States v. Lincoln, 494 F.2d 833 (9th Cir. 1974) ; United States v. Patterson, 492 F.2d 995 (9th Cir. 1974). Nor need we consider whether defendant "consented" to the search. *See* United States v. Heimforth, 493 F.2d 970 (9th Cir. 1974).