**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Abel TORRES–URENA,
Defendant-Appellant.**

**No. 74–2949.**

United States Court of Appeals,
Ninth Circuit.

March 20, 1975.

Frank T. Vecchione (argued), San Diego, Cal., for defendant-appellant.

William A. Shaw, Asst. U. S. Atty. (argued), for plaintiff-appellee.

Before BROWNING and WRIGHT, Circuit Judges, and ZIRPOLI,* District Judge.

## OPINION

PER CURIAM:

Appellant was convicted of possession of marijuana with intent to distribute in violation of 21 U.S.C. section 841(a)(1). His sole argument on appeal is that there was no basis for a founded suspicion to justify the stop that led to his arrest. We reverse.

* Honorable Alfonso J. Zirpoli, United States District Judge, for the Northern District of California, sitting by designation.

1. One might assume from Judge Wright's dissent that appellant stopped his truck voluntarily when he saw the officers' uniforms, and that he was not the subject of a "stop" that must be justified on the ground of a founded suspicion. The matter is admittedly not entirely clear from the record, which discloses the following interchange between agent Dixon and the Assistant United States Attorney:

Q. What happened then?
A. We waited for the vehicle to come out to the road, and we stopped him just before he entered Monument Road.
Q. How long did you wait before the vehicle came to the intersection, or your location?
A. Probably two or three minutes.
Q. What happened when the vehicle came to where you were parked?

At approximately 6:20 on the morning of May 1, 1974, United States Customs Patrol Officer Leonard Dixon, with his partner, was patrolling Monument Road, an east-west artery in San Ysidro, California. The sun was up, the day was already bright, and Dixon noticed a pickup truck parked approximately 50 yards up a private driveway south of the road. A man was loading cardboard boxes into the pickup, but Dixon could not see him clearly enough at that distance to describe him and could not see what was inside the boxes. He had been informed that a female school teacher lived in the residence at the end of the driveway, but he had never met her, was unaware if she was married, and was not familiar with all the vehicles she used. He did know, however, that there were no other structures between this residence and the border, which was one-quarter mile away. When the pickup emerged from the driveway, Dixon stopped it and found marijuana in plain view in the luggage area and arrested appellant, the driver.[1]

Appellant moved to suppress the marijuana, and the hearing on the motion produced the following facts in addition to the above: Dixon had been assigned to the Monument Road area for six months, and had patrolled it daily during that time. To his best recollection, there

A. My partner and I approached the vehicle. I went directly to the driver. He had stopped for us when he saw the uniforms.
I went directly to the driver, my partner circled around to my right and checked out the truck. As I approached the driver, I noticed five or six kilos of marijuana lying in the truck.
Q. Now, was the—is this an open-bedded pick-up truck?
A. Yes, sir, it was.
Q. Were you in full uniform?
A. Yes, sir.
Q. Were you driving a marked car?
A. Yes, sir.

Supp. R.T. at 10, lines 2–22. We are satisfied from the foregoing that appellant's decision to stop was sufficiently influenced by the official appearance and conduct of the agents that they must show that it was based on a founded suspicion. It is worth noting that both parties, and the court below, assumed that the officers needed a founded suspicion to justify the "stop."

were 15 to 20 residences along Monument Road. Some of them were truck farms, so it was not unusual to see pickup trucks on Monument Road. While there are no farms south of the road, where the school teacher's residence is located, there apparently are farms across the road from that residence. During his six months patrolling the area, Dixon had made between 500 and 1,000 arrests of aliens illegally in the country, but had made only three or four arrests for narcotics violations, although he testified he had seen "sea bags or boxes being drug from the brush out to the driveway," and it appears he believed these to contain contraband. The trial court denied the motion to suppress.

■ The issue before us is whether, on the basis of the foregoing, Dixon had a founded suspicion that appellant was engaged in criminal conduct. We are not unmindful of Wilson v. Porter, 361 F.2d 412 (9th Cir. 1966), but look to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its companion case, Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), for the proper standards. United States v. Ward, 488 F.2d 162, 169 (9th Cir. 1973) (en banc); see Weisgell, Stop, Search and Seize: The Emerging Doctrine of Founded Suspicion, 9 U.S.F.L.Rev. 219 (1974). Those cases teach that the central concern of the court is the reasonableness of the officer's conduct. 392 U.S. at 19, 20, 88 S.Ct. 1868. The standard for review is an objective one, *id.* at 22, 88 S.Ct. 1868, and the court must evaluate each case on its unique facts, *id.*, 392 U.S. at 59, 88 S.Ct. 1868, to determine whether the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Id.* at 21, 88 S.Ct. 1868, at 1880. In evaluating the inferences that may rationally be drawn from the facts at the officer's disposal, the court takes heed of Mr. Justice Harlan's admonition in his concurring opinion in *Sibron, supra,* that "[t]here must be something at least in the activities of the person being observed or in his surroundings that af-firmatively suggests particular criminal activity, completed, current, or intended." 392 U.S. at 73, 88 S.Ct. at 1907. It is not enough that the officer has a hunch that criminal activity may be afoot. *Terry, supra,* 392 U.S. at 22, 88 S.Ct. 1868.

■ Applying this standard to the facts presented at the suppression hearing, we are unable to discern any facts that would make the conduct observed by the officers anything but innocuous. See United States v. Mallides, 473 F.2d 859, 861 (9th Cir. 1973). It was not so early in the morning that appellant's presence was inherently suspicious for that reason—the sun was up and the day was already, in Dixon's words, "pretty bright." Pickup trucks are common in the area since there is a good deal of truck farming around Monument Road; while he was unfamiliar with this truck, Dixon was not familiar with all the vehicles used by the school teacher who lived in this residence. Appellant's presence was not inherently suspicious—although Dixon knew that a female lived in that residence, he did not know if she was married and had not, indeed, ever seen her. There was nothing inherently suspicious about appellant's box-loading. Dixon could not tell what was inside the boxes, and had very limited experience with narcotics arrests in the area, his main concern being apprehension of aliens illegally in the country, and it does not appear this was a notorious smuggling area. None of these facts, singly or together, provide any reasonable basis for inferring that appellant was smuggling marijuana, or otherwise violating the law. Had the stop taken place anywhere distant from the border, there would be no question but that it was invalid. The sole support for the government's position, therefore, is that this residence is located one-quarter mile from the border. We are unwilling to hold that persons found or residing near the border are entitled only to diluted protections under the Fourth Amendment, and therefore reject the government's argument that proximity to the border converts these otherwise innocu-

ous activities into conduct suspicious enough to justify the stop here.

United States v. Jaime-Barrios, 494 F.2d 455 (9th Cir. 1974), upon which the trial court relied, is distinguishable. The officer there had encountered appellant driving an ordinary automobile at a high rate of speed over a rough, unpaved, remote road near the border. He lived in one of the four residences in the area, and knew all the other residents and the cars they drove. He had not seen appellant's car at any of the residences in the area during his patrols throughout the night, and found it odd that a person would be driving a vehicle without four-wheel drive in that terrain. He had apprehended persons smuggling aliens or marijuana over this road on many occasions. Given his unique familiarity with the occupants of the area, his experience in past apprehensions, and appellant's high rate of speed in a vehicle without four-wheel drive, the officer reasonably suspected that appellant was engaged in some smuggling activity. Similarly, in the recent case of United States v. Rodriguez-Alvarado, 510 F.2d 1063 (9th Cir., 1975), the officer first saw appellant's vehicle accelerating over a bumpy road in an area near the border that has a high incidence of smuggling activity. As he followed the speeding car, the officer saw it swerve from side to side, appearing heavily loaded although there was only one visible occupant. When the vehicle reached speeds of 55 to 60 miles per hour in a residential area, the officer decided to stop it. As is apparent, in these cases the officers had indicia of criminality in addition to the proximity to the border to justify their inference that the drivers of these vehicles were smuggling. Here, Dixon had little experience with marijuana smuggling in the area, was only moderately familiar with the neighborhood, knew little of the school teacher and had no reason to believe appellant's early morning box-loading involved criminal activity of any kind. His hunch that it might because of the proximity to the border is not sufficient to provide a founded suspicion for the stop.

The judgment is reversed, and the case is remanded with directions to dismiss the indictment.

EUGENE A. WRIGHT, Circuit Judge (dissenting):

Respectfully, I dissent.

In United States v. Holland, 510 F.2d 453 (9th Cir., 1975), we again cited with approval the rule of this circuit taken from Wilson v. Porter, 361 F.2d 412 (9th Cir. 1966), where it was said:

" . . . due regard for the practical necessities of effective law enforcement requires that the validity of brief, informal detention be recognized whenever it appears from the totality of the circumstances that the detaining officers could have had reasonable grounds for their action. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing."

*Id.* at 415.

One-fourth of a mile from the international border at 6:20 a. m. in May 1974, customs patrol officers patrolled an area near the beach in San Ysidro, California. One officer, with three and one-half years' experience as a customs patrol officer, customs inspector and border patrol officer, the last six months of which had involved working in the very area in question almost daily, observed a truck parked part way up a private driveway to the west of the highway. The driveway led to the home of a female school teacher, who was known to own passenger cars but no trucks.

On his daily patrols through the area, the officer had observed "traffic around the area, what appeared to be sea bags or boxes being drug from the brush out to the driveway." The officer knew that there were few other residences or buildings of any kind in the immediate area where he saw the truck, and none between the driveway and the border. He also knew that the area where the truck was observed that morning was a high-crime area, since he had participated in arrests of 500 to 1,000 aliens and in three

or four narcotics arrests along the same road during the period he had been patrolling it.

Having never previously seen a pickup truck around the residence, and observing the defendant throwing boxes into the vehicle, the officer waited for it to return to the public road. The defendant, driving the vehicle, stopped it when he saw the uniforms of the officers. As one officer approached the driver, he noticed five or six kilos of marijuana lying in the open bed of the truck. One of the cardboard boxes had turned on its side, and the contraband therein was clearly visible. The arrest followed.

The district judge properly denied the defendant's motion to suppress the evidence, consisting of 220 pounds of marijuana. The facts of this case, whether reconsidered in light of the totality of the circumstances (see Maj. op. at 542), or viewed in comparison with prior cases where this court has applied the leading Supreme Court decisions in the "stop and frisk" area to factual situations involving narcotics seizures, clearly support the district court's conclusion that the "stop" at issue here was based on a "founded suspicion" of illegal activity.

This court has often held that purely arbitrary factors, alone or in combination, are of themselves insufficient to give rise to the type of "founded suspicion" necessary to justify brief noncustodial detention and interrogation. See, e. g., United States v. Brignoni-Ponce, 499 F.2d 1109 (9th Cir. 1974). However, at least in high-violation areas, we have refused to disapprove such brief investigatory "stops" where otherwise innocuous activities have taken place in combination with other activities which do appear somewhat suspicious under all of the circumstances. See United States v. Larios-Montes, 500 F.2d 941, 943–44 (9th Cir. 1974); see also United States v. Nunez-Villalobos, 500 F.2d 1023 (9th Cir. 1974); United States v. Vital-Padilla, 500 F.2d 641 (9th Cir. 1974); United States v. Patterson, 492 F.2d 995 (9th Cir. 1974).

The majority seems to imply that none of the above factors could have reasonably supported the officer's decision to question the driver of the vehicle. As to the hour, they point out that the sun was already up and the day "pretty bright."

But the officer, who knew the ordinary habits of those on his "beat," might well have found activity at this hour at least unusual enough to attract his attention to other activities reasonably suspicious in that context. Such was our conclusion in the case relied upon by the district court, United States v. Jaime-Barrios, 494 F.2d 455, 456 (9th Cir. 1974), where this court attached some weight to the fact that the events there in question took place at 6:30 a. m. on a July morning.

Nor does somewhat heightened surveillance of border areas subject those living in those areas to "diluted protections under the Fourth Amendment." (Maj. op. at 542.) In the first place, it is well recognized that limited, investigatory stops of the sort contemplated by the officer in this case involve minimal incursions into the zone of Fourth Amendment interests, and can be justified by the legitimate needs of law enforcement even though less than "probable cause" exists. Adams v. Williams, 407 U.S. 143, 145–46, 92 S.Ct. 1921, 30 L.Ed.2d 612 (1972); Terry v. Ohio, 392 U.S. 1, 20–23, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Secondly, applying the objective test which the majority correctly notes is the proper one, it does not seem unreasonable that an officer might be more suspicious of the existence of a smuggling operation ¼ mile from an international border than if he had observed the identical facts considerably further away from any possible smuggling entry point. This court has repeatedly held that proximity to a border is a factor which may be considered in evaluating whether founded suspicion could have existed under a given set of circumstances. See, e. g., United States v. Clark, 501 F.2d 492, 494 (9th Cir. 1974); United States v. Jaime-Barrios, supra.

Finally, we note that the brief detention by the officers was neither arbitrary nor harassing. The driver stopped for the officers when he saw their uniforms.

Their questioning was brief and purposeful. There was no public embarrassment or physical contact.

The final factor relied on by the district judge, which the majority finds of no value in establishing a reasonable basis for suspicion on these facts, is the agent's familiarity with the area and its pattern of criminal activity. On this score also the district judge relied on our opinion in *Jaime-Barrios*. The majority attempts to distinguish that case as based on the "unique familiarity with the occupants of the area" and the more extensive "experience with past apprehensions" of the officer in that case. (Maj. op. at 543.)

I find these distinctions insignificant. It is true that the officer in this case was not a two-year resident of the area as was the apprehending officer in *Jaime-Barrios*. However, there is no residency requirement in order for an officer to rely on his familiarity with an area in determining when investigatory stops are warranted. Rather, it should be required only that the agent be sufficiently familiar with the area to recognize as unusual the early morning loading operations in the school teacher's driveway.

The fact that several of the teacher's neighbors were truck farmers did not immunize the loading operation from suspicion. And even though only three or four of the arrests this officer had made nearby over the past six months had been for narcotics smuggling, this should not have made him any less vigilant for the emergence of the type of smuggling operation which he knew from his long experience in customs work to be an all too common occurrence along the border. When he saw the boxes being loaded on the truck, his surmise that illegal activity might be afoot was certainly reasonable in light of his knowledge that the activities observed followed an identical *modus operandi* to that employed in other smuggling operations with which he was familiar. *Cf.* United States v. Larios-Montes, 500 F.2d 941, 943–44 (9th Cir. 1974); United

States v. Vital-Padilla, 500 F.2d 641 (9th Cir. 1974).

While I am in disagreement with the majority's conclusion that the judgment of the district court should be reversed, I am equally disturbed by the majority's failure to spell out more certain standards for district courts to follow. The majority takes note of the Supreme Court's expectation that this area of the law would develop only gradually, with the validity of investigatory stops evaluated, on the basis of careful factual determinations. (Maj. op. at 543.) However, I do not feel that such orderly common law development is inconsistent with our practice of offering as much guidance as possible to the district courts who must apply the law in myriad daily situations. I feel the majority fails to indicate with sufficient specificity what facts and circumstances may be taken into account in making the decision to detain a suspect.

Here, the district court reasonably relied on *Jaime-Barrios*, a case which to me appears controlling in all of its essential aspects. At some point, we must begin to pay greater deference to factual determinations of trial court that situations before them cannot be differentiated from those reported in decisions of this court. As we cautioned in *Jaime-Barrios*:

"[W]here the record discloses circumstances, as it does here, which could move an officer in the reasonable exercise of his duty to the action taken, we need not look for a reconstructed, after-the-fact explanation of what may have been nothing more at the time of the occurrence than the instinctive reaction of one trained in the prevention of crime."

494 F.2d at 458, *citing* Wilson v. Porter, 361 F.2d at 415. The district court is in the best position to apply this standard.

Judged in terms of the relationship of the stop here to reasonable police interpretation of their law enforcement duties, the denial of the suppression motion seems entirely proper. Once the officer observed a pattern of activity par-

alleled an identifiable criminal mode of operation, his ability to ask those participating in the activity a few questions to satisfy himself that the loading operation was innocent should have followed as a matter of course. The facts added up to suspicious circumstances, and the officers were obligated to make further investigations. As we said in United States v. Holland, *supra*:

> "Clearly, the officers were not required to rule out all possibility of innocent behavior before initiating a brief stop and request for identification. The test is founded suspicion, not probable cause. Even if it was equally probable that the vehicle or its occupants were innocent of any wrongdoing, police officers must be permitted to act *before* their reasonable belief is verified by escape or fruition of the harm it was their duty to prevent."

510 F.2d at 455.

I would affirm.