**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Gerald Duane KERR, Defendant-Appellant.**

**No. 86–1277.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 9, 1987.

Decided May 21, 1987.

Before SCHROEDER, WIGGINS and THOMPSON, Circuit Judges.

WIGGINS, Circuit Judge:

Gerald Duane Kerr appeals his conviction for possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Kerr entered a conditional guilty plea, reserving his right to challenge the district court's denial of his motion to suppress evidence. Kerr argues that the police subjected him to a *Terry* stop without founded suspicion and therefore violated the fourth amendment. We agree and reverse and remand.

### FACTS

On Sunday December 15, 1985 at 3:30 p.m., Deputy Sheriff Hedrick was on routine patrol in a rural neighborhood. Deputy Hedrick observed Kerr by a car parked near a barn located on a residential property. The car's trunk was open, exposing cardboard boxes. Because he knew of several recent residential burglaries in the area, Deputy Hedrick made a U-turn, returning to the residence's driveway. The driveway was a one lane dirt road approximately seventy to one hundred feet long. As Deputy Hedrick pulled into the driveway, Kerr was backing his car out. When he was approximately forty to fifty feet from the patrol car, Kerr left his own car and met Deputy Hedrick on foot. Without being asked, Kerr produced his birth certificate and vehicle registration and stated that he had no driver's license. Deputy Hedrick questioned Kerr, investigated the premises and discovered a methamphetamine laboratory in the barn.

Kerr was indicted for three counts of drug offenses involving the manufacture and distribution of methamphetamine. After an evidentiary hearing, the district court denied Kerr's motion to suppress the evidence collected as a result of his encounter with Deputy Hedrick, concluding that

Nancy L. Simpson, Sacramento, Cal., for the plaintiff-appellee.

Carl E. Larson, Sacramento, Cal., for the defendant-appellant.

the encounter did not constitute a seizure within the meaning of the fourth amendment. Alternatively, the district court apparently found that Deputy Hedrick had founded suspicion to conduct a stop, stating "[t]he officer, believing that a residential burglary was in progress, was accordingly justified in driving his car into the driveway." The district court entered judgment against Kerr and this appeal followed. We have jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

The appeal concerns two issues. Was Deputy Hedrick's initial contact with Kerr a stop within the meaning of the fourth amendment? If so, was the stop supported by founded suspicion? We conclude that Deputy Hedrick's encounter with Kerr constituted a stop within the meaning of the fourth amendment. We also conclude that the stop was without founded suspicion.

### 1. *Standard of Review*

Fourth amendment issues regarding the lawfulness of a search or seizure generally present mixed questions of law and fact. We uphold findings of fact made at a suppression hearing unless they are clearly erroneous. *United States v. Feldman,* 788 F.2d 544, 550 (9th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987). We review de novo the district court's decision that no fourth amendment seizure occurred. *United States v. Sokolow,* 808 F.2d 1366, 1369 (9th Cir. 1987); *cf. United States v. Al-Azzawy,* 784 F.2d 890, 891–92 (9th Cir.) (whether encounter is a warrantless arrest or a *Terry* stop is examined de novo), *cert. denied,* — U.S. —, 106 S.Ct. 2255, 90 L.Ed.2d 700 (1986). We also review de novo the district court's conclusion that a particular body of facts constitutes founded suspicion. *Sokolow,* 808 F.2d at 1369; *United States v. Sutton,* 794 F.2d 1415, 1425 (9th Cir.1986); *United States v. Maybusher,* 735 F.2d 366, 371 & n. 1 (9th Cir.1984), *cert. denied,* 469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985).

### 2. *Stop*

Not every encounter between the police and the public is entitled to fourth amendment protection. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968). Because search and seizure issues arise in a myriad of fact patterns, the Supreme Court has not defined the precise point at which a fourth amendment seizure occurs. *See United States v. Ward,* 488 F.2d 162, 169 (9th Cir.1973) (en banc).

The vast majority of automobile stops are initiated by police officers using flashing lights or a siren and are clearly fourth amendment seizures. *Ward,* 488 F.2d at 169. This case, however, presents the unusual problem of characterizing an automobile stop as either a voluntary encounter or an investigative stop. The characterization is crucial because a voluntary encounter intrudes on no constitutionally protected interest and therefore receives no fourth amendment protection. In contrast, a temporary detention for investigative purposes, or *Terry* stop, requires that the police officer have founded suspicion: reasonable suspicion based on articulable facts of some criminal activity afoot. *See United States v. Torres-Urena,* 513 F.2d 540, 542 (9th Cir.1975).

The district court found that Kerr was not detained, concluding that "the mere fact that the road was temporarily blocked by a police car is not detention, inasmuch as defendant Kerr still could have done numerous things at this point, such as driving around the car, or simply ignoring the police officer." We disagree.

Kerr stopped and exited his car primarily in response to Deputy Hedrick's official appearance and conduct, rather than of his own volition. Arriving in uniform and in a marked patrol car, Deputy Hedrick unquestionably appeared to be acting in an official capacity. Instead of waiting in his patrol car at the roadside, or parking and walking, Deputy Hedrick pulled into and

blocked the one lane driveway as Kerr was backing out. Deputy Hedrick's conduct thus precipitated the confrontation with Kerr. *See Torres-Urena*, 513 F.2d at 541 n. 1 (defendant's decision to stop was "sufficiently influenced by the official appearance and conduct of the agents" that government must show founded suspicion).

Under the circumstances, Deputy Hedrick's authority and conduct provided Kerr with no reasonable alternative except an encounter with the police. Consequently, the encounter cannot be deemed voluntary. Voluntariness presupposes a freedom of choice that Kerr did not have. The district court's suggestion that Kerr could have backed around the car or ignored Deputy Hedrick defies common sense; Kerr's freedom to depart was restrained at the moment Deputy Hedrick blocked the one-lane driveway.

Finally, several facts suggest that Kerr reasonably perceived that he was the target of Deputy Hedrick's investigation and thus was not free to leave. *See United States v. Patino*, 649 F.2d 724, 728–29 n. 4 (9th Cir.1981) (the defendant's perception of his ability to leave is a factor in determining whether a fourth amendment seizure has occurred). Because this was a rural neighborhood and the residents of the property were not at home, Kerr could reasonably conclude that Hedrick's U-turn and entry into the driveway was directed at intercepting him. Additionally, Kerr's disclosure to Deputy Hedrick that he had no driver's license indicates that Kerr felt detained and thus compelled to provide information against his own interest. *Patino*, 649 F.2d at 727 ("[T]he obvious knowledge on her part [of the] inconsistency between the airline ticket and her identification would give rise to an inference that she would not willingly have produced them had she not felt obliged to do so.").

### 3. *Founded Suspicion*

We next examine whether the fourth amendment stop was supported by founded suspicion. To establish founded suspicion to support a temporary detention, the police officer must "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880.

In *Torres-Urena*, 513 F.2d at 541, the police officer observed the defendant at 6:20 a.m. on a bright morning loading cardboard boxes into a pickup truck in a private driveway. The house stood a quarter of a mile from the Mexican border in a neighborhood in which the arresting officer had made between 500 and 1,000 arrests. The officer knew that a female school teacher lived at the residence, but did not know if she was married. The officer also knew that she owned passenger cars, but was not familiar with all the vehicles she used. On these facts, we held that the officer's stop of the truck as it was leaving the home was not supported by founded suspicion.

■ Deputy Hedrick had fewer facts to form a basis for founded suspicion than the officer in *Torres-Urena*. Deputy Hedrick saw Kerr loading boxes into a vehicle on residential property at mid-afternoon, a time of day not raising an inference of criminal activity. Deputy Hedrick did not know who lived at the residence and did not know what vehicles the residents drove. The level of crime in the neighborhood was disputed. That Kerr was seen loading cardboard boxes in a rural area where arguably an unusual number of residences had been burglarized does not constitute founded suspicion.

■ In conclusion, we recognize that effective law enforcement is often predicated on hunches developed from a police officer's years of experience in detecting criminal activity. However, underlying every fourth amendment analysis is a balancing between two competing concerns—society's interest in effective law enforcement and the individual's privacy and liberty interests. A fourth amendment stop based on hunches alone will not withstand constitutional scrutiny. *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880. Because we find that Deputy Hedrick stopped Kerr without founded suspicion, we reverse the district court's denial of Kerr's motion to suppress. We remand

this case to the district court to permit Kerr to withdraw his guilty plea. Fed.R. Crim.P. 11(a)(2).

The district court's judgment is REVERSED and REMANDED.