**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert ROCHA–LOPEZ,
Defendant-Appellant.**

No. 74–2601.

United States Court of Appeals,
Ninth Circuit.

Dec. 8, 1975.

Rehearing and Rehearing En Banc
Denied Jan. 28, 1976.

Robert W. Ripley, Jr., San Diego, Cal.,
for defendant-appellant.

Peter Nunez, Asst. U. S. Atty., San
Diego, Cal., for plaintiff-appellee.

OPINION

Before CARTER and WALLACE, Circuit Judges, and JAMESON,* District
Judge.

JAMES M. CARTER, Circuit Judge.

On January 23, 1975, this court affirmed the conviction of the defendant
Robert Rocha-Lopez for possession of 165
pounds of marijuana with intent to distribute, in violation of 21 U.S.C.
§ 841(a)(1). We found that the totality
of the circumstances supported a "founded suspicion" for the stop of his car. On
June 30, 1975, the Supreme Court remanded the case for further consideration in light of *United States v. Ortiz*,
422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d
623 (1975),[1] and *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45
L.Ed.2d 607 (1975). We have re-examined the facts of this case in the light of
these recent Court cases and we find a
"reasonable suspicion" for the stop. We
affirm.

Robert Rocha-Lopez was tried by a
judge without a jury, on stipulated facts
arising out of the hearing on a motion to
suppress the marijuana as illegally
seized. The facts upon which Border Patrol Agents Barry and Young based their
decision to stop the defendant are as follows:

---

\* Honorable William J. Jameson, Senior United
States District Judge, District of Montana, sitting by designation.

**1.** *Ortiz* dealt with the need for probable cause
to search cars at fixed checkpoints. Because

this remanded appeal involves a detention stop
which did lead to probable cause for a search,
we do not find *Ortiz* at issue here.

1) The vehicle was observed at 6:40 a. m., travelling one and a half miles from the Mexican border, in an area notorious for smuggling.

2) Normal traffic for that time of day is light, consisting of local residents (almost all of whom were known to Agent Young) going to work. Neither the vehicle nor the defendant were known to Young, and the vehicle unnecessarily came to a sudden stop at the intersection, as if unfamiliar with the area.

3) Shortly after turning from Highway 94 (an East-West road) onto Buckman Springs Road (a North-South road) and upon seeing the marked patrol car, the defendant suddenly braked down to about ten miles per hour.

Agent Young had been with the Border Patrol for approximately five years, had been stationed in the area of the stop (Campo) for the past three years, and was therefore quite experienced with respect to the significance of the above facts.

In our memorandum of January 23, 1975, we held that, under the circumstances, the agents were legally justified in stopping the defendant's car, based on the doctrine of "founded suspicion". This doctrine was first enunciated by this court in *Wilson v. Porter*, 361 F.2d 412, 415 (9 Cir. 1966), wherein it was stated that,

"... [D]ue regard for the practical necessities of effective law enforcement requires that the validity of brief, informal detention be recognized whenever it appears from the totality of the circumstances that the detaining officers could have had reasonable grounds for their action. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing."

It was constitutional, *Wilson* held, to briefly detain citizens under circumstances not justifying an arrest, for the purpose of a limited inquiry in the course of a police investigation. Under the "founded suspicion" test police officers were not required to rule out all possibility of innocent behavior before initiating a brief stop and request for identification, but were to have a reasonable belief, under all of the circumstances, that a car or its occupants were involved in criminal activity. *United States v. Holland*, 510 F.2d 453, 455 (9 Cir. 1975). The official must be able to point " 'to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' " *United States v. Mallides*, 473 F.2d 859, 861 (9 Cir. 1973), quoting from *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "The facts are measured against an objective reasonable man standard, not by the subjective impressions of the particular officer." *Mallides, supra*, 473 F.2d at 861.[2]

We conclude that there is no substantial difference between the doctrine of "founded suspicion" used by this court, and the "reasonable suspicion" test announced in *Brignoni-Ponce*. The Supreme Court in that case did not expressly approve or disapprove the "founded suspicion" doctrine.[3] Justice Powell, in formalizing the Court's "reasonable suspicion" test, decided to base his test on prior Supreme Court decisions and not on circuit cases containing the "founded suspicion" test. Thus he quoted from *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968),

---

**2.** *Mallides* involved six Mexican-American appearing males sitting erectly in a car. We realize that the language that "Mallides' conduct was completely innocuous" (473 F.2d at 861), will have to be reexamined in light of *Brignoni-Ponce*, which held that a "Mexican appearance is a relevant factor" and that an "extraordinary number of passengers" is also a factor. 422 U.S. at 885, 95 S.Ct. 2574.

**3.** Footnote 10 of the opinion, 422 U.S. at 885, 95 S.Ct. at 2582, reads,

"The courts of appeals decisions cited throughout this section are merely illustrative. Our citation of them does not imply a view of the merits of particular decisions. Each case must turn on the totality of the particular circumstances."

the language "the police officer must be able to point to specific and articulable facts which, taken together with rational inference from those facts, *reasonably warrant* that intrusion" (emphasis added); and from *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972), the language, "A brief stop of a suspicious individual . . . may be most *reasonable* in light of the facts known to the officer at the time." (emphasis added)

In *Brignoni-Ponce* the issue was whether a roving patrol may stop a vehicle in an area near the border and question its occupants when the only ground for suspicion is that the occupants appear to be of Mexican ancestry. The Court held that the ground, standing alone, was not sufficient. It reasoned that the Fourth Amendment applies to brief detentions and bars unreasonable seizures. The reasonableness of such seizures depends upon "a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." 422 U.S. at 878, 95 S.Ct. at 2579. The public interest in controlling the illegal entry of aliens at the Mexican border, balanced against the modest intrusion in stopping cars, justifies stops on facts that do not amount to the probable cause required for an arrest. Officers may question the driver and passengers about their citizenship and immigration status, and may ask them to explain suspicious circumstances.

Such stops are proper only when the officers are "aware of specific articulable facts, together with rational inferences from these facts, that reasonable warrant suspicion that the vehicles contain aliens who may be illegally in the country." *Id.* at 884, 95 S.Ct. at 2582. A requirement of "reasonable suspicion" adequately guards the public interest, the Supreme Court held, because the "nature of illegal alien traffic and the characteristics of smuggling operations tend to generate articulable grounds for identifying violators." Id. at 883, 95 S. Ct. at 2581.

Mr. Justice Powell, speaking for the Court, listed the various factors an officer may consider. Characteristics of the area, its proximity to the border, patterns of traffic on the particular road, previous experience with alien traffic, and information about recent illegal border crossings in the area, are all relevant. The defendant's behavior, such as erratic driving or obvious attempts to evade officers, can also support a "reasonable suspicion". Also relevant are aspects of the vehicle itself, such as: the apparent load of the vehicle or the extraordinary number of passengers or the mode of dress and haircut characteristic of Mexicans living in Mexico. *Id.* at 885, 95 S.Ct. 2574.

Many of these factors are present in the case of defendant Rocha-Lopez. The area in which the agents encountered the vehicle was one and a half miles from the border in an area notorious for smuggling. Normal traffic for that time of day was light, and the agents, who knew almost all the local residents and their automobiles, did not recognize the defendant. The vehicle came to an unnecessary sudden stop at an intersection and later, upon seeing the marked patrol car, suddenly braked down to about ten miles per hour.

Therefore, the "reasonable suspicion" test is satisfied in this case. It is irrelevant that the defendant was ultimately convicted of marijuana, not alien, smuggling because at the time of the stop a reasonable suspicion existed that he was smuggling aliens.

We need not decide if a stop based only upon a reasonable suspicion of marijuana or drug smuggling would be proper. We note that the problem may be more imaginary than real, because the existence of most questionable circumstances which lead to a suspicion of marijuana or drug smuggling, such as a hidden compartment or a low-riding car, will also raise a reasonable suspicion of alien smuggling.

We hold that in this case the agents had a reasonable suspicion that alien smuggling was occurring. The officers

carefully limited their intrusion to a visual observation of the car and a question of the defendant relating to the origin of his trip. Additional facts derived from the investigatory stop provided probable cause for the search. *See United States v. Rodriguez-Alvarado*, 510 F.2d 1063, 1064 (9 Cir. 1975).

Affirmed.