**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Guadalupe AVALOS–OCHOA,
Defendant-Appellant.**

**No. 77–1308.**

United States Court of Appeals,
Ninth Circuit.

July 20, 1977.
Rehearing and Rehearing En Banc
Denied Sept. 22, 1977.

Michael J. McCabe, Savitz, McCabe & Welles, San Diego, Cal., argued for appellant.

R. Michael Bruney, Asst. U. S. Atty., San Diego, Cal., on the brief, Terry J. Knoepp, U. S. Atty., Robert D. Krause, argued, San Diego, Cal., for plaintiff-appellee.

Before BARNES, WALLACE and SNEED, Circuit Judges.

## I.

*Statement of the Case.*

SNEED, Circuit Judge:

Guadalupe Avalos-Ochoa appeals his conviction for six violations of the Immigration and Nationality Act, 8 U.S.C. § 1324(a)(1) and (2), smuggling and transporting of illegal aliens. He was found guilty by a court trial in the United States District Court for the Southern District of California after an evidentiary hearing where a motion to suppress evidence was denied. Appellant was sentenced to the custody of the Attorney General for a period of four years on each count, the sentences to run concurrently.

## II.

### The Facts.

Following a sensor readout at midnight indicating border crossing activity, Agent Hungate of the United States Border Patrol set up surveillance of an area one mile north of the Mexican border in Imperial Beach, California. The area south of the officer's position included mountainous terrain, unkept agricultural fields, and some heavily irrigated fields. The area to the north was residential. Hungate, an agent with the Border Patrol for over two years, testified that he had made approximately two hundred alien apprehensions in the immediate area.

At about 3:15 a. m., Hungate saw six or seven people cross the street three blocks away. He then proceeded along streets by which he could close off the area if any vehicles were leaving. At that time the dispatcher informed him that a nearby resident had reported a group of eighteen suspected illegal aliens in his yard. While circling the resident's block, Agent Hungate saw a low-riding car start up and speed off. At that time he turned on his red light and as the fleeing car increased speed, activated his siren. Following a three block chase at speeds of fifty to eighty miles per hour the car yielded.

Mr. Avalos-Ochoa, who had been driving, got out of the car saying in Spanish that he didn't want to drive; that someone had told him to drive. His pants were wet and dirty from the knees down. The car contained two other Mexican appearing individuals visible to the officer. Agent Hungate then arrested appellant. Four more individuals were subsequently found in the trunk of the car. All the passengers were determined to be illegal aliens.

## III.

### The Appeal.

Appellant moved to suppress the evidence of the presence of the alien witnesses in his car as well as their expected testimony at the time of trial. The trial court denied the motion. Mr. Avalos-Ochoa contends on appeal that the border patrol officer lacked (1) a founded or reasonable suspicion to make the investigatory stop of his vehicle, and (2) probable cause to make the arrest. We affirm the district court's judgment of conviction.

## IV.

### Discussion.

A. The stop of the vehicle: reasonable suspicion existed.

The courts have recognized that the practical necessities of law enforcement require the allowance of brief investigatory detentions under circumstances that would not constitute probable cause for a search or arrest. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Supreme Court in *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), recognized the valid public interest in controlling the illegal entry of aliens at the Mexican border. The Court stated:

> . . . because of the importance of the governmental interest at stake, the minimal intrusion of a brief stop, and the absence of practical alternatives for policing the border, we hold that when an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion.

422 U.S. at 881, 95 S.Ct. at 2580.

To justify such a stop there must be specific articulable facts, and rational inferences therefrom creating a reasonable suspicion that the vehicle contains illegal aliens. This court has held that "founded suspicion" and the "reasonable suspicion" of *Brignoni-Ponce* are essentially the same. *United States v. Rocha-Lopez,* 527 F.2d 476 (9th Cir. 1976). Among the facts which an

officer can consider in formulating such reasonable suspicion are the location and traffic patterns of the area in which the vehicle is seen, information about recent illegal border crossings in the area, the driver's behavior such as erratic driving or attempts to escape, the appearance of a heavily loaded car, and the officer's experience in detecting illegal entry and smuggling. *United States v. Brignoni-Ponce,* 422 U.S. at 884–85, 95 S.Ct. 2574.

■ The facts in this case make it clear that the Border Patrol officer at the time he turned on his red light had a reasonable suspicion to make an investigatory stop of the appellant's vehicle.[1] Not only are the facts neatly within the guidelines of *Brignoni-Ponce* but also are similar to those in cases in which this court has found that reasonable suspicion existed. *See, e. g., United States v. Rocha-Lopez,* 527 F.2d 476 (9th Cir. 1976); *United States v. Rodriguez-Alvarado,* 510 F.2d 1063 (9th Cir. 1975); *United States v. Bugarin-Casas,* 484 F.2d 853 (9th Cir.), *cert. denied,* 414 U.S. 1136, 94 S.Ct. 881, 38 L.Ed.2d 762 (1974). It was early morning. The area is in close proximity to the border and known for smuggling activity but with very little other traffic. Sensor activity had indicated movement that night. After the officer saw a group of people walking in the area a larger group of people was reported. The only car he saw after he commenced surveillance sped away, riding low in back. Officer Hungate had extensive experience in alien apprehensions in the immediate area. He was reasonable under all the circumstances in believing that the car or its occupants were involved in criminal activity. *United States v. Holland,* 510 F.2d 453, 455 (9th Cir.), *cert. denied,* 422 U.S. 1010, 95 S.Ct. 2634, 45 L.Ed.2d 674 (1975).

Appellant argues that the sensor alert which prompted the Border Patrol's surveillance was over three hours old and so stale that it could not be included as a factor leading to a reasonable suspicion. He also contends that because the informant-resident's phone call was never verified it failed to meet any indicia of reliability required by *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) which, appellant asserts, adopted the reliability of informants tests of *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) and *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and made them a part of founded suspicion. Deprived of those factors appellant insists that those remaining are not sufficient to constitute founded suspicion.

We disagree. *Adams* did not adopt the *Spinelli* and *Aguilar* tests of reliability. It recognized that "Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability." 407 U.S. at 147, 92 S.Ct. at 1924, and that "One simple rule will not cover every situation." *Ibid.* It acknowledged that an informant's tip "completely lacking in indicia of reliability" would require additional investigation to provide adequate support for founded suspicion. *Ibid.*

There is, however, far more here than an unreliable tip. The resident's phone call, when considered with the sensor alert, the nature of the area in which Agent Hungate was operating, and the sighting of six or seven people crossing the street, ceases to be a cipher in the founded suspicion calculus. Each circumstance acquires significance because of the presence of the other. Their combined weight, when added to the beginning of the appellant's flight, is sufficient to constitute founded or reasonable suspicion.

**B. The arrest: probable cause existed.**

■ An officer, to have probable cause to arrest, must have facts and circumstances within his knowledge and of which he had reasonably trustworthy information sufficient to warrant a prudent man in believing that an offense had been committed and the person arrested had committed it. *Beck*

---

1. *See United States v. Morrison,* 546 F.2d 319 (9th Cir. 1976).

*v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Founded suspicion may ripen into probable cause to arrest or search through the occurrence of after-the-stop facts and incidents. *United States v. Portillo Reyes,* 529 F.2d 844 (9th Cir. 1975); *United States v. Rodriguez-Alvarado,* 510 F.2d 1063, 1064 (9th Cir. 1975); *United States v. Jaime-Barrios,* 494 F.2d 455 (9th Cir.), *cert. denied,* 417 U.S. 972, 94 S.Ct. 3178, 41 L.Ed.2d 1143 (1974); *United States v. Barron,* 472 F.2d 1215 (9th Cir.), *cert. denied,* 413 U.S. 920, 93 S.Ct. 3063, 37 L.Ed.2d 1041 (1973).

■ After Agent Hungate's valid "stop" of the car driven by the appellant by turning on the red light, the appellant sped away and was apprehended after the officer gave chase. When he exited the car he was saying that he hadn't wanted to drive. His pants were wet and dirty from the knees down suggesting his route through the gully and wet fields. Two Mexican-appearing individuals were in the car. Founded suspicion, through the force of these events, was ripened to probable cause to arrest the appellant for transporting illegal aliens. The fact that the agent did not determine the passengers' alienage prior to appellant's arrest does not alter this conclusion. The pattern of the events in this case is a familiar one. Under such circumstances to require a determination of alienage of passengers before arresting the driver would resemble urging one about to step over a ditch to measure its width first.

AFFIRMED.