**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Esteban PULIDO–SANTOYO,
Defendant-Appellant.**

No. 78–1377.

United States Court of Appeals,
Ninth Circuit.

June 26, 1978.

Rehearing and Rehearing En Banc
Denied Aug. 15, 1978.

Barbara F. Brown, Asst. U. S. Atty. (on the brief), Michael H. Walsh, U. S. Atty., Barbara F. Brown, Asst. U. S. Atty. (argued), San Diego, Cal., for defendant-appellant.

Eugene G. Iredale, Federal Public Defender (argued), San Diego, Cal., for plaintiff-appellee.

Before BARNES and HUG, Circuit Judges, and CURTIS, District Judge [*].

BARNES, Senior Circuit Judge:

Appellant was convicted of knowingly aiding and assisting an illegal alien to enter the country and assisting the alien to avoid apprehension in violation of 8 U.S.C. § 1325 and 18 U.S.C. §§ 2, 3.

He asserts two claims of error: (1) that the stop of the pickup truck in which he was a passenger was not based on reasonable suspicion. The truck was being driven by the illegal alien, Guillermo Blanco, and was stopped by a Border Patrol agent who had seen it pass by minutes before going in the opposite direction with appellant as the only occupant. The Border Patrol agent and a partner were apprehending a group of illegal aliens in a notorious smuggling area known as Imperial Beach, and three aliens had just fled in the direction from which the truck was returning. Though the case is complicated by the fact that the stop took place in a populated area, Ninth Circuit law makes it apparent that the facts proved were sufficient to provide a reasonable suspicion that the truck was engaged in illegal activity.

Appellant also contends (2) that there was insufficient evidence to establish that he knew Guillermo was illegally in the country. Evidence existed which showed, however, that while Blanco and Pulido were in Tijuana, for several days they made fairly elaborate arrangements by which Guillermo would call appellant after he had crossed the border, and have appellant drive Guillermo's truck across the border for him and pick him up on the United States side. This procedure, in addition to a prior conviction for smuggling aliens in the same area and under similar circumstances, was sufficient to establish Pulido's knowledge that Blanco was an illegal alien.

Appellant was sentenced for six months in prison on each of the two counts to run concurrently. Sentence was suspended and he was placed on two-year probation.

## I. VALIDITY OF THE STOP

■ Appellant's first and strongest argument is that the Border Patrol did not have sufficient justification to stop the truck in which he was riding. The facts relevant to this issue are undisputed by the parties and based entirely on the testimony of the arresting officer, Border Patrol Agent Zevenbergen. All the events took place February 23, 1977, in Imperial Beach, California, a beach town about one and a half miles from the Mexican border.

Agent Zevenbergen and another agent received a radio message from their dispatcher about 9 p. m. informing them that a resident citizen had just reported a large group of what appeared to be illegal aliens moving northward on Imperial Beach. Zevenbergen testified that Imperial Beach is the southernmost inhabited area in the United States at that point and a notorious smuggling region because of its proximity to the border and its adjacency to the tidal region at the mouth of the Tijuana River. Zevenbergen himself had apprehended about 300 aliens in that area in the previous month.

[*] Honorable Jesse W. Curtis, Senior United States District Judge, Central District of California, sitting by designation.

Zevenbergen positioned himself at the intersection of First Street and Descanso, while his partner parked nearby and went directly to the beach. First Street runs parallel to the beach and dead ends one-eighth of a mile south of Descanso. The area is residential, "mostly apartments." At the end of First Street are the Boca Rio apartments, the first buildings north of the border.

Zevenbergen's partner informed him by walkie-talkie that he had apprehended a large group of illegal aliens on the beach but that at least three had escaped and were running south along the beach. About that time appellant drove down First Street past Zevenbergen in a green pickup truck. Zevenbergen said appellant drove slowly past him, looking first to the right at the group of aliens being herded away from the beach and then back to the left at Zevenbergen, who was able to get a good look at his face.

"Several minutes" later, as the agents were loading those apprehended into Border Patrol vehicles, the green pickup drove back from the area of the Boca Rio apartments. Zevenbergen could not see who was in the truck except to note that there were now two occupants. On cross-examination defense counsel elicited from Zevenbergen that, although he was familiar with the area, he did not recognize the truck, that he saw no other vehicles going north before appellant reappeared and that he had initially ascertained that appellant was Latin in appearance. Zevenbergen pursued the truck and stopped it some distance away without any further evidence of suspicious activity. Zevenbergen then determined that Guillermo Blanco, the driver and owner of the truck, was an illegal alien.

Border Patrolmen roving near the border can make an investigative stop "only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country." *United States v. Brignoni-Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).[1]

Although none of these factors standing alone would be sufficient to constitute reasonable suspicion, *see, e. g., United States v. Morrison*, 546 F.2d 319, 320 (9th Cir. 1976); it is clear that appellant's Latin appearance, *United States v. Rocha-Lopez*, 527 F.2d 476, 478 (9th Cir. 1975), *cert. denied*, 425 U.S. 977, 96 S.Ct. 2181, 48 L.Ed.2d 802 (1976); the fact that an officer who knew the area well did not recognize his car, *id.*; the proximity to the border and the area's history of smuggling activity, *United States v. Avalos-Ochoa*, 557 F.2d 1299 (9th Cir. 1977); are all relevant grounds upon which the Border Patrol could properly rely. *See generally United States v. Brignoni-Ponce, supra*, 422 U.S. at 884–85, 95 S.Ct. 2574.

That appellant was driving quite slowly one-eighth of a mile before the street reached a dead end does not seem at all strange; nor is the Government's case aided by his quite natural reaction of looking at the group of aliens being herded in from the beach and then back at a uniformed Border Patrol agent standing alone under a street light at night. *Cf. United States v. Mallides*, 473 F.2d 859 (9th Cir. 1973) (mere refusal to look at agent not sufficient basis for stop).

Without more, the stop was questionable. *See United States v. Martinez-Tapia*, 499 F.2d 1244 (9th Cir. 1974) (car proceeding slowly on road one mile from border in sparsely populated area not sufficient basis for stop). But the arresting officer had an additional factor: the three missing aliens. Zevenbergen knew from his partner's radio

---

1. Appellee also argues that this is not a roving patrol case but an extended border search case within the meaning of *United States v. Markham*, 440 F.2d 1119 (9th Cir. 1971). Because this investigative stop probably comports with the requirements of founded suspicion as developed in the case law of this Circuit, it is unnecessary to analyze this possibility at length. However, it should be noted that all of the extended border search cases involved either constant surveillance, sparsely populated areas, or some greater modicum of assurance that the vehicle had just crossed the border. *See also United States v. Weil*, 432 F.2d 1320 (9th Cir. 1970), *cert. denied*, 401 U.S. 947, 91 S.Ct. 933, 28 L.Ed.2d 230 (1971).

call that three aliens were fleeing south on the beach, the same general direction in which appellant had driven. When the truck returned several minutes later with two occupants, Zevenbergen's suspicions were properly aroused.

Appellant rebuts by noting that the neighborhood was apparently well populated and that there was at least one set of apartments at the end of First Street from which the vehicle could have been picking up a local resident. But the latest case law is against him.

In *United States v. Nunez-Villalobos*, 500 F.2d 1023 (9th Cir. 1974), the Court validated a stop of a pickup truck at 2:05 a. m. in a sparsely populated, hilly area one mile from the border. In addition to the hour and the nature of the area, the only reason for the stop was that the Border Patrol agent had seen the truck first proceeding eastward toward open country and then a few minutes later returning westward in the direction of the area's only towns. Similarly in *United States v. Holland*, 510 F.2d 453 (9th Cir. 1975), police outside a nearly isolated house where guns and narcotics had just been seized stopped a car that had proceeded slowly past the house and returned after reaching a dead end. The Court approved the stop, primarily because there was also a fugitive warrant for one of the people living in the house.

*Nunez-Villalobos*, *Holland*, and other cases with relatively unfounded stops, *United States v. Rocha-Lopez*, 527 F.2d 476 (9th Cir. 1975) (notorious area, early morning hours; out-of-town car braking suddenly to ten miles per hour upon sighting Border Patrol vehicle); *United States v. Roberts*, 470 F.2d 858 (9th Cir. 1972), *cert. denied*, 413 U.S. 920, 93 S.Ct. 3071, 37 L.Ed.2d 1042 (1973) (notorious area; car riding low with passenger slumped low in front seat), can be distinguished as occurring in sparsely populated areas.[2] But in none of these cases was there any factor as strong as the officers' actual knowledge of the presence of specific illegal aliens in the immediate vicinity, some under arrest and at least three fleeing from arrest.

The case is close, but cannot be distinguished from *Nunez-Villalobos* or *Holland*, and we therefore hold the stop legal.

## II. SUFFICIENCY OF THE EVIDENCE THAT PULIDO KNEW BLANCO WAS AN ALIEN

■ Appellant also claims that the Government failed to prove beyond a reasonable doubt that he knew Guillermo Blanco was an illegal alien.

The Government asserts that because appellant failed to make a Fed.R.Crim.P. 29(a) motion for acquittal at the close of the trial that he has waived his right to appellate review of the sufficiency of the evidence against him. Rule 29 is clearly intended to apply to jury trials, *see, e. g., United States v. Curtis*, 568 F.2d 643, 647 (9th Cir. 1978), but its applicability to bench trials such as this one is less clear. No case law in this Circuit has been called to our attention on point. The only courts to decide the issue have reasoned that in a bench trial a plea of not guilty is the functional equivalent of a motion to acquit and that sufficiency questions are always fully reviewable on appeal. *United States v. Pitts*, 428 F.2d 534, 535 (5th Cir.), *cert. denied*, 400 U.S. 910, 91 S.Ct. 154, 27 L.Ed.2d 149 (1970); *United States v. Besase*, 373 F.2d 120 (6th Cir. 1967). *See also* 8A *Moore's Federal Practice* ¶ 29.02 at 29–5 (Rev. 2d ed. 1977). This issue need not be decided here, for it appears that even

---

2. The strongest case of all for the Government is *Wilson v. Porter*, 361 F.2d 412 (9th Cir. 1966), the fountainhead of founded suspicion-reasonable suspicion analysis in this Circuit. In *Wilson*, the stop took place in a Los Angeles suburb and the only articulated basis for it was the sighting of a car proceeding on the same street and in the same direction only two blocks further than where it had been sighted twenty-five minutes earlier. *Wilson*, however, preceded *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and *Brignoni-Ponce*, and its status has been questioned. *See United States v. Torres-Urena*, 513 F.2d 540, 542 (9th Cir. 1975). *But see United States v. Rocha-Lopez*, 527 F.2d 476, 477 (9th Cir. 1975), *cert. denied*, 425 U.S. 977, 96 S.Ct. 2181, 48 L.Ed.2d 802 (1976) (impliedly equating *Wilson* doctrine and that of *Brignoni-Ponce*).

under full appellate review, appellant's claim is meritless.

At trial appellant constructed a plausible explanation of his activities that would account for this ignorance. His brother testified that appellant was on his way to Tijuana to visit his girlfriend. Appellant stopped at his brother's house only to have his car break down. The brother's landlord was contacted in hopes that his nephew, Guillermo, would fix the car. Guillermo was out of town, but by happy circumstance, was in Tijuana and needed his own truck delivered to him there, a task appellant willingly agreed to carry out.

Guillermo confirmed the story and then testified that, although he had known appellant by name for six months and spent considerable time with him during the four days they spent in Tijuana on the trip in question, that he never told appellant, or anyone else for that matter, that he was an illegal alien. Appellant also stresses that the truck was registered in California to Guillermo and that Guillermo had lived in Los Angeles for four years.

The Government, however, as prevailing party, is entitled to have the evidence viewed in the light most favorable to it, together with reasonable inferences therefrom which would support the verdict. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Viewed in this light, appellant's claim is meritless.

The Government showed, through the testimony of Guillermo Blanco, that after appellant brought Guillermo's truck to Tijuana, he met Guillermo and saw him on and off for the next three or four days. Guillermo stated that he never directly told appellant that he could not drive his own truck across *because* he was an illegal alien, but he did tell appellant that he *could not* bring the truck across, and asked appellant to bring the truck across for him "as a favor". Guillermo testified that he arranged to call appellant at a restaurant in Tijuana when he had got across the border and tell appellant where to pick him up. He made the call and had appellant pick him up at Imperial Beach, the first inhabit-

ed area north of the border, an area where there are no roads leading from the border, and no legal crossing areas. This alone would be enough to justify a finding that appellant had reason to conclude Guillermo Blanco was an illegal alien.

There is still one additional fact. At trial, the defense stipulated to the admission of appellant's prior conviction for illegally transporting aliens in violation of 8 U.S.C. § 1324(a)(2) [*U. S. v. Esteban Pulido-Santoyo*, 14890 (D.C.S.D.Cal.1973)]. The prior conviction was based on an incident in which appellant had delivered a vehicle to Imperial Beach. Illegal aliens were then placed in the vehicle and driven north by appellant's co-defendant in that action. This was obviously indicative of appellant's knowledge of the notorious nature of Imperial Beach as a smuggling area. Furthermore, in this case appellant immediately turned the driving over to Guillermo after picking him up and the use of the same technique in the prior offense is clearly probative.

As the record came to this court, this last bit of evidence does not appear in the record on appeal. It was admitted at trial and properly designated by the prosecutor as part of the record on appeal, but it is not included among the exhibits. For that reason, and without objection, this court ordered Exhibits 2 and 3 added to the record before us.

█ We hold that brief, informal detention of a vehicle is valid if the totality of circumstances provides the stopping officers reasonable ground for their action in making the stop. A reasonable or founded suspicion is all that is necessary—some basis from which it can be determined that the detention was not arbitrary or harassing. The facts as to the stop of the vehicle here were clearly sufficient to support a reasonable suspicion and were neither arbitrary nor harassing. *United States v. Espinoza and Oropeza*, 578 F.2d 224, No. 77–3410 & 77–3421, slip opinion p. 1360, 9th Cir., decided May 1, 1978. There existed sufficient probative factual evidence, together with rational inferences therefrom, that the trial

judge could reasonably arrive at the conclusion that appellant knew, or should have known, that his companion was an illegal alien when in the United States. (*Id.* supra).

The appellant's conviction is AFFIRMED.