**UNITED STATES of America,
Appellant,**

v.

**Pedro HEREDIA–CASTILLO, Appellee.**

**No. 79–1402.**

United States Court of Appeals,
Ninth Circuit.

April 14, 1980.

---

Patty Merkamp Stemler, Washington, D. C., argued, for appellant; Marvin K. Shurtliff, U. S. Atty., Boise, Idaho, Mary S. Hobson, Asst. U. S. Atty., Boise, Idaho, on brief.

James F. Kile, Boise, Idaho, for appellee.

Before MERRILL and FARRIS, Circuit Judges and BONSAL *, District Judge.

FARRIS, Circuit Judge:

Appellee Heredia-Castillo was indicted for use of a forged immigration document in violation of 18 U.S.C. § 1426(b). The United States District Court for the District of Idaho granted Heredia-Castillo's motion to suppress the forged document on the ground that it was seized during the course of an unconstitutional investigatory stop and ordered suppression of certain statements made at the time of the document's surrender. After denying the government's request for a stay pending an appeal of the suppression order, the district court dismissed the indictment because of the government's failure to prosecute. The government has appealed both the suppression order and the dismissal of the indictment. We affirm.

Immigration Agent John Nygaard and a partner, while patrolling an area south of Nampa, Idaho, observed an automobile coming from a section of the Maurice Clements Ranch. Both the driver and his sole passenger, appellee Heredia-Castillo, appeared to be of Mexican descent. The Maurice Clements Ranch was well known among immigration agents as a refuge for illegal aliens. Agent Nygaard had arrested several aliens there earlier the same day. A number of other persons, believed by Nygaard to be illegal aliens, had escaped.

As the agents turned to follow the car in which Heredia-Castillo was riding, it appeared to swerve and speed up. By the time the agents had completed their turn, however, the subject car was traveling at normal speed. The agents followed the car for half an hour during which time nothing suspicious happened. When they pulled alongside the car, Agent Nygaard recognized the driver as a man whom he had once arrested as an illegal alien. He recalled that the driver had a brother and suspected that the passenger might be that brother. Nygaard signalled to the driver to pull over. Nygaard's partner briefly questioned the driver and found that he was legally in the United States. Nygaard then questioned Heredia-Castillo about his na-

---

* The Honorable Dudley B. Bonsal, Senior United States District Judge for the Southern District of New York.

tional origin and the legality of his presence in this country. He asked to see Heredia-Castillo's immigration papers and, upon inspection, determined them to be counterfeit. Heredia-Castillo was then arrested.

## DISCUSSION

The district court granted Heredia-Castillo's motion to suppress the counterfeit documents on the grounds that the initial stop of the car was unconstitutional because it was not based on a "founded suspicion" that the car contained illegal aliens. If the district court was correct in finding the initial stop unconstitutional, then suppression was mandated since surrender of his immigration papers was a direct product of the stop. Even if the district court erred in concluding that the agents had an insufficient basis to stop the car, the decision to suppress must nonetheless be affirmed if the agents, after determining the driver to be legally documented, had no independent basis reasonably to suspect the legality of his passenger, Heredia-Castillo.

### I. The Legality of the Initial Stop.

As we noted in *United States v. Rocha-Lopez*, 527 F.2d 476, 477 (9th Cir. 1976), the "founded suspicion" standard applied by courts in this circuit to test the legality of investigatory stops is substantially the same as the "reasonable suspicion" test enunciated in *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). The Court in *Brignoni-Ponce* held that "officers on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country." *Id.* at 884, 95 S.Ct. at 2582. The district court found that the arresting immigration agents did not articulate sufficient facts to support a reasonable suspicion that the car's driver was an illegal alien. We disagree.

■ The Court in *Brignoni-Ponce* held that appearance of Mexican ancestry was, without more, insufficient to justify an investigatory stop. *Id.* at 887, 95 S.Ct. at 2583. The Court made clear, however, that "[t]he likelihood that any given person of Mexican ancestry is an alien is high enough to make Mexican appearance a relevant factor." *Id.* In the instant case, the agents' suspicion was based on several facts in addition to the passengers' Mexican appearance. It is uncontroverted that the immigration agents first spotted the subject car as it was coming from a section of the Maurice Clements Ranch, a known refuge for illegal aliens. It is further uncontroverted that Agent Nygaard, earlier the same day, had arrested several illegal aliens at that ranch. Several other persons who appeared to be aliens had escaped, some on foot and at least one by automobile. Most importantly, it is uncontroverted that Agent Nygaard recognized the driver as a man he had previously arrested for being illegally in the country.

Heredia-Castillo argues that the district court may have discredited Agent Nygaard's testimony that he suspected the driver had again illegally entered this country. This contention overlooks the district court's express finding that the only reason the agents stopped the car was their belief that the driver was an illegal alien. The immigration agents articulated sufficient suspicious facts to warrant stopping the automobile.

### II. The Legality of Questioning Heredia-Castillo.

■ The more difficult question is whether, after determining that the driver was legally documented, the immigration agents had sufficient independent grounds to suspect Heredia-Castillo of being an illegal alien. The agents testified that, as they turned to pursue the subject car, it appeared to swerve and speed up. Although the district court did not expressly discuss the credibility of the agents' testimony, Heredia-Castillo contends that the court must have discounted this report of the car's suspicious activity. This contention finds some support in the record where the district judge indicated that the car was not "doing anything particularly unusual." *E.R. 6.*

Without this last suspicious factor, then, the agents, after determining the driver's legality, had the following reasons to suspect Heredia-Castillo: (1) he was in an area in which illegal aliens were frequently found; (2) several persons reasonably believed to be illegal aliens had escaped earlier the same day in this area; (3) he appeared to be of Mexican ancestry; (4) he rode in a car driven by a person who had previously violated immigration laws; and (5) Nygaard believed Heredia-Castillo might be the driver's brother.

The government stresses the second factor, relying on *United States v. Pulido-Santoyo*, 580 F.2d 352 (9th Cir. 1978) which found actual knowledge of specific illegal aliens in the vicinity to be a consideration of great importance. In *Pulido-Santoyo*, we suggested that Latin appearance and the general prevalence of illegal aliens in the area might not be sufficient basis to stop a car and question its passengers. *Id.* at 354. But in addition to these two circumstances, the investigating agent in *Pulido-Santoyo* knew that, only a few minutes earlier, several aliens had been arrested in the area and several others had escaped on foot. Relying heavily on the last factor, the court upheld the legality of the investigatory stop.

Here, by contrast, the prior arrest had apparently occurred earlier enough in the day that the agents could not be certain that the fleeing aliens were still in the area. This factor, therefore, is less significant here than in *Pulido-Santoyo*. Further, the driver's prior illegal presence had little, if any, bearing on the question of Heredia-Castillo's legality.

Agent Nygaard's knowledge that the driver had a brother and his belief that Heredia-Castillo might be that brother would be of greater significance if Nygaard had given reasons for his belief. None are found in the record.

The government has enumerated several facts which might cast a certain suspicion on every person in the area who appeared to be of Mexican ancestry. Under the record before us, such a generalized suspicion is not sufficient for us to overturn the trial court's ruling. While it would have assisted us in reviewing the matter if the district court had indicated its factual basis for its ruling, when we consider the record *with proper deference to the district judge's assessment* of the credibility of testimony, we cannot find that the record establishes that the questioning of Heredia-Castillo was warranted by a "founded suspicion" and was thus permissible under the Fourth Amendment.

The government has not presented us with any reason, other than the alleged erroneousness of the suppression order, for reversing the district court's refusal to grant a stay pending appeal or its dismissal of the indictment. The suppressed document was the *corpus delicti* of the offense without which, the government concedes, the prosecution could not proceed. We need not decide, therefore, whether the district court erred in refusing to stay the trial and in dismissing the indictment for failure to prosecute.

Because we uphold the district court's ruling that Heredia-Castillo's Fourth Amendment rights were violated and suppression was thus mandated, we do not reach the question of the validity of his Fifth Amendment contention.

Affirmed.

MERRILL, Circuit Judge, dissenting:

I dissent. The court majority concedes that the stop of the car and interrogation of the driver were supported by founded suspicion and thus were justified. What we are concerned with is the relatively slight additional intrusion upon appellee's privacy that resulted when he was subjected to a brief interrogation and his immigration papers were examined. In my opinion that intrusion was amply supported by the five grounds for suspicion recited in part II of the majority opinion.