UNITED STATES of America, Plaintiff-Appellee,

v.

Agustin GARCIA–NUNEZ, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Charles Ray BENSON, Defendant-Appellant.

Nos. DC 82–1302, DC 82–1404.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 1983.

Decided June 28, 1983.

---

Pamela J. Naughton, Asst. U.S. Atty., San Diego, Cal., for defendant-appellant.

Scott Russell Barnett, Kenneth McMullan, San Diego, Cal., for plaintiff-appellee.

Before HUG and CANBY, Circuit Judges, ORRICK, District Judge.*

CANBY, Circuit Judge:

Appellant Garcia-Nunez was convicted of conspiracy to conceal and transport undocumented aliens, and of transporting an undocumented alien. He appeals, arguing that police officers violated his fourth amendment rights when they stopped the car he was driving. We affirm.

Appellant Benson was convicted of conspiracy to conceal and transport undocumented aliens, and of aiding and abetting Garcia-Nunez in the transportation of an undocumented alien. He argues that the evidence will not support the aiding and abetting conviction. We agree and reverse that conviction.

*Appellant Garcia-Nunez*

Police Officers of National City, California, alerted by a citizen's report, staked out a house which they suspected was being used in smuggling. After a time some men left the house and drove away in a car also thought to be involved in the smuggling. An officer stopped the car, which was driven by defendant-appellant Garcia-Nunez. When the officer asked the passengers about their citizenship, they admitted that they were aliens illegally in this country. Garcia-Nunez was convicted of conspiracy to conceal and transport undocumented aliens in violation of 18 U.S.C. § 371 and 8 U.S.C. § 1324, and of transporting an undocumented alien in violation of 8 U.S.C. § 1324(a)(2). He appeals, contending that the car stop violated the fourth amendment because the police lacked the "founded suspicion" necessary to justify the initial stop.

The district judge found that the police had founded suspicion which justified a brief *Terry* stop of the car driven by Gar-

* The Honorable William H. Orrick, United States District Judge for the Northern District of California, sitting by designation.

cia-Nunez. We review this finding under the clearly erroneous standard. *United States v. Tate,* 694 F.2d 1217, 1223 (9th Cir.1982); *United States v. Post,* 607 F.2d 847, 849 (9th Cir.1979). Founded suspicion means that the officers must have "specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country." *Id.* at 478, *quoting United States v. Brignoni-Ponce,* 422 U.S. 873, 884, 95 S.Ct. 2574, 2581, 45 L.Ed.2d 607 (1975). The officers need not rule out all possibility of innocent behavior. *United States v. Patterson,* 492 F.2d 995, 997 (9th Cir.), *cert. denied,* 419 U.S. 846, 95 S.Ct. 82, 42 L.Ed.2d 75 (1974).

Here the police had received the following information from third parties:

1. An anonymous tip (from a few weeks before) that some vehicles, including a grey Mercury bearing license number 868–UYG, were involved in smuggling drugs or aliens in and out of a house at 1320 Hoover Street. Police may consider an anonymous tip in determining whether to make a stop. *United States v. Avalos-Ochoa,* 557 F.2d 1299, 1302 (9th Cir.), *cert. denied,* 434 U.S. 974, 98 S.Ct. 532, 54 L.Ed.2d 466 (1977).

2. A complaint from a neighbor that Mexican-looking men were standing near a grey Mercury exchanging money.

3. A later report from the same neighbor that the men entered the house mentioned in the anonymous tip.

Police officers or agents had also observed the following actions:

4. A man left the house and was seen driving around and around the block, presumably conducting "counter-surveillance."

5. Another man, Garcia-Nunez, left the house and appeared to look around for signs of trouble.

6. At a signal from this "lookout," four men then walked hurriedly from the house to the Mercury.

7. The Mercury driven by Garcia-Nunez was the car identified in the anonymous tip.

8. The men in the rear seat of the Mercury sat low in the seat.

9. The men, by their dress, appearance, and demeanor, "appeared" to be illegal aliens. *Brignoni-Ponce,* 422 U.S. at 885, 95 S.Ct. at 2582 (experienced officers may recognize recent Mexican residents by dress and haircut).

10. The passengers were of Mexican descent. Mexican ancestry is not alone a sufficient justification for a stop, but it is a permissible factor for founded suspicion. *Brignoni-Ponce,* 422 U.S. at 887, 95 S.Ct. at 2583.

We conclude that these facts provided the officers with founded suspicion to stop the car. *See United States v. Rocha-Lopez,* 527 F.2d 476, 477 (9th Cir.), *cert. denied,* 425 U.S. 977, 96 S.Ct. 2181, 48 L.Ed.2d 802 (1976); *United States v. Vasquez-Cazares,* 563 F.2d 1329 (9th Cir.), *cert. denied,* 434 U.S. 1021, 98 S.Ct. 746, 54 L.Ed.2d 769 (1978); *United States v. Hernandez-Gonzales,* 608 F.2d 1240, 1242–43 (9th Cir.1979). The conviction is accordingly affirmed.

*Appellant Benson*

Police officers of National City, California, searched the house of defendant-appellant Benson and discovered undocumented aliens, including Antonio Amesquita-Medina ("Medina"). Benson was charged with conspiring to conceal and transport undocumented aliens in violation of 18 U.S.C. § 371 and 8 U.S.C. § 1324; with harboring undocumented alien Medina in violation of 8 U.S.C. § 1324; and with aiding and abetting defendant Garcia-Nunez in transporting Medina in violation of 8 U.S.C. § 1324(a)(2) and 18 U.S.C. § 2. The district court held the search of Benson's house to be illegal and granted Benson's motion to suppress evidence resulting from it.

The testimony of Medina was used to convict Garcia-Nunez of transporting an illegal alien. The district judge, however, ruled that the testimony of Medina was the fruit of the illegal search and so was inadmissible against Benson. Consequently, the judge acquitted Benson of harboring, but found him guilty of conspiracy and aiding and abetting.

■ Benson does not appeal the conspiracy conviction. He contends, however, that insufficient admissible evidence exists to support the conviction for aiding and abetting. The government does not argue that sufficient evidence remained to convict Benson directly. The government argues instead that Benson is vicariously liable for the transportation of Medina because it was an act of his co-conspirator Garcia-Nunez in furtherance of the conspiracy. *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1945); *United States v. Beecroft,* 608 F.2d 753, 757 (9th Cir.1979). One charged with aiding and abetting may be convicted upon evidence showing guilt of the principal offense. *United States v. Bryan,* 483 F.2d 88, 95–97 (3d Cir.1973); *United States v. Bell,* 457 F.2d 1231, 1235 (5th Cir.1972), *appeal after remand,* 470 F.2d 1178. We assume without deciding that this rule applies where liability for the principal offense is vicarious.

The conviction of Garcia-Nunez for transporting Medina, however, was procured only through the use of evidence obtained in violation of Benson's constitutional rights. That evidence was held to be inadmissible against Benson. The issue here is whether, under such circumstances as these, the guilt of Garcia-Nunez can be attributed to co-conspirator Benson.

We first consider whether the connection between the illegal search and the use of the conviction against Benson is so attenuated as to remove the taint. *See United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978); *United States v. Duncan,* 570 F.2d 292 (9th Cir.1979). We conclude that the taint persists. The conviction of Garcia-Nunez was obtained directly through exploitation of the illegality. No intervening act of will broke the connection as in *Ceccolini,* 434 U.S. at 276, 98 S.Ct. at 1060. Nor is the connection between the evidence and the search merely remote and theoretical. Cf. *United States v. Jones,* 608 F.2d 386, 390–91 (9th Cir.1979) (key to motel room obtained illegally but occupant consented to search). The use of the illegal search evidence against Benson was foreseeable; indeed it was the purpose of the police action. Such foreseeable and intended use certainly militates against a conclusion that the connection is attenuated. *See Comment,* 115 U.Pa.L.Rev. 1136, 1148 (1967).

■ The exclusionary rule exists principally to deter police misconduct. *United States v. Calandra,* 414 U.S. 338, 350, 94 S.Ct. 613, 621, 38 L.Ed.2d 561 (1974). In deciding whether to apply the exclusionary rule to a novel situation, we must weigh the benefits of deterrence against the social costs of excluded evidence. *United States v. Janis,* 428 U.S. 433, 447–64, 96 S.Ct. 3021, 3028–36, 49 L.Ed.2d 1046 (1976) (use in civil cases); *United States v. Havens,* 446 U.S. 620, 626, 100 S.Ct. 1912, 1916, 64 L.Ed.2d 559 (1980) (impeachment); *United States v. Larios,* 640 F.2d 938, 941–42 (9th Cir.1981) (use in sentencing). Exclusion is required here to maintain deterrence. Few crimes are solo efforts; most involve several people acting in concert. Thus co-conspirator liability is possible in a large proportion of criminal cases. Some defendants, like Garcia-Nunez here, would lack standing to object to the illegal evidence. To impute their liability to the remaining defendants would eliminate all deterrence in the large class of cases involving conspiracy.

We conclude that the government cannot so readily circumvent the exclusionary rule. No admissible evidence supports Benson's conviction for aiding and abetting. We reverse his conviction on Count Four.

AFFIRMED in part and REVERSED in part.

HUG, Circuit Judge, concurring:

I fully concur in Judge Canby's opinion, and I write separately to add an additional clarifying thought concerning Benson's appeal of his aiding and abetting conviction.

The issue is brought more clearly in focus to me if we assume, hypothetically, that Benson's trial was severed from that of Garcia-Nunez, and that Benson was being tried on the same charges of conspiracy and aiding and abetting the transportation of

an illegal alien. The theory advanced by the prosecution on the aiding and abetting charge was that Benson was guilty of the substantive crime of transporting an illegal alien because he was vicariously liable for the substantive crime committed by his coconspirator, Garcia-Nunez, in furtherance of the conspiracy, under *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

If the prosecution sought to introduce the evidence held to have been obtained in violation of Benson's constitutional rights solely to convict Benson on either charge, it is obvious that it would be disallowed. No different conclusion should result merely because Garcia-Nunez was joined as a defendant in this trial and the evidence was admissible against him.